## LEE WILSON & COMPANY v. WILLIAM R. COMPTON BOND & MORTGAGE COMPANY.

### Opinion delivered April 1, 1912.

1. DRAINS—POWER TO CONDEMN LANDS.—The power to condemn land and to impose assessments for the purpose of reclaiming lands by a system of drainage is founded, not only upon the ground that it is for the benefit of the public health, but also upon the ground that the improvement is of a public nature and for a public purpose. (Page 458.)

2. IMPROVEMENT DISTRICT—NATURE OF PUBLIC USE.—It is not necessary that the entire State should directly enjoy or participate in an improvement, in order to constitute it a public use, within the meaning of the constitutional provision that property shall not be taken without consent of the owner except for a public use. (Page 459.)

3. EMINENT DOMAIN—TAKING FOR PUBLIC USE.—Everything which tends to enlarge the resources and promote the productive power of any considerable number of the inhabitants of a section of the State contributes, either directly or indirectly, to the general welfare and prosperity of the whole community. (Page 459.)

4. CONSTITUTIONAL LAW—DELEGATION OF POWERS.—The Legislature, in the absence of any constitutional inhibition, may legislate directly for a drainage district or it may by general laws delegate authority to establish them to some public agency to exercise such power for the benefit of that portion of the public embraced therein. (Page 459.).

5. IMPROVEMENT DISTRICTS—EFFECT OF LEGISLATION ESTABLISHING.— When the Legislature provides for the establishment of an improvement district, it thereby declares that such district is for the public good, and it may do this without the necessity of declaring in specific terms that the district is created for the public health or welfare. (Page 460.)

6. SAME—CONSENT OF LAND OWNERS.—It is not necessary, in forming improvement districts outside of municipalities, that the will of the land owners within the district should be ascertained. (Page 460.)

7. SAME—LOAN OF COUNTY'S CREDIT.—Const. 1874, art. 12, sec. 5, prohibiting the loan of credit of any county to any corporation or association, is not violated by acts authorizing improvement districts to borrow money. (Page 460.)

8. DRAINS—SUFFICIENCY OF NOTICE.—The acts providing for the creation of drainage districts in this State (Acts 1909, p. 829, as amended by Acts 1911, p. 193) are not invalid in providing that two weeks' notice shall be given by publication in a county newspaper both of the hearing for the establishment of the drainage district and of the determination of the benefits accruing to the lands therein. (Page 461.)

9. STATUTE—WHEN IN FORCE.—An act which is passed by both branches of the Legislature, and which contains the emergency clause in com-

pliance with Amendment No. 11 to the Constitution, is regarded as being in full force and effect during the whole day upon which it is approved.   (Page 462.)

10.   DRAINS—NOTICE OF ASSESSMENT.—A published notice of the hearing of the assessment of benefits in a drainage district is sufficiently definite which describes certain lands as all the lands in a certain named township, or as all of the lots in a certain town.   (Page 462.)

11.   SAME—ENLARGEMENT OF DISTRICT.—Lands situated outside of a proposed drainage district which are benefited by the system of drainage proposed may, under Acts 1909, p. 836, subsequently be included therein, and the notice of the assessment may be included in the notice given of the assessment of the lands originally embraced in the district.   (Page 463.)

12.   SAME—INCLUDING LAND IN TWO DISTRICTS.—A tract of land may be benefited by two drainage districts; the amount of the benefit received from each district being a question to be determined by the agency making the assessments therein.   (Page 463.)

Appeal from Mississippi Chancery Court, Osceola District; *Charles D. Frierson,* Chancellor; affirmed.

*D. F. Taylor,* for appellant.

1.   The issuance of bonds in a proceeding of this kind is without constitutional sanction.     Art. 12, sec. 5, Const.; 33 Ark. 497.

2.   The drainage law of 1909, as amended in 1911, authorized the organization of a drainage district including lands that will "be benefited by the proposed system of drainage." The act authorizes the organization of a drainage district merely for the benefit of private individuals, as there is nothing in the act to show that it is for the public or general welfare and use.   Acts 1909, p. 831; Acts 1911, p. 194; 57 N. E. 308.

3.   The notice provided by the act for informing the land owners of the filing of the engineer's report, the basis of the creation of the district, and the notice provided for informing them of the filing of the report of the commissioners including the schedule of assessments, is insufficient, and amounts to depriving the owners of due process of law.   Acts 1911, p. 194, § 1; Acts 1909, p. 837, § 7; 1 Page & Jones, 141.

4.   The published notice of the assessments does not contain a description of each tract of land and town lot affected. The descriptions are fatally inadequate and defective, and not

in compliance with the statute. Acts 1909, p. 837, § 7; 2 Page & Jones, 755.

5. Since the engineer's report was filed on April 20, 1911, and the first notice thereof was published the next day, and the act under which it was published was not approved by the Governor until April 28, 1911, there was no authority in law for the publication. Acts 1911, p. 200.

The second order made on April 28, the day the act was approved, resetting the hearing for May 13, 1911, was not entered of record until January, 1912. This was fatal to the proceedings.

6. The creation of a drainage district is purely a legislative function, and the Legislature can not delegate its power to the county court. 20 Johns. (N. Y.) 269; 7 *Id.* 541; 6 Cowen (N. Y.) 571; 11 Wend. (N. Y.) 154; 2 Hill (N. Y.) 14.

7. Where it is sought to assess a tract of land outside of the boundaries of the district established, special notice is required by law to be published, and a special hearing given to the owner to determine whether or not his land will be benefited. The assessment of outside tract in this case was void, and should be enjoined. Acts 1909, p. 836.

8. The assessment in this proceeding of appellant's land already included in and assessed for benefits in another drainage district is void. There is a limit to the benefits that any tract of land can derive from drainage, and the presumption is that this tract derived all the benefits it could receive from drainage by the construction of the ditches in district No. 8. 1 Page & Jones, 248.

*J. T. Coston* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. On the question of double assessment because a tract of land already embraced in another district was also assessed in this, it is sufficient to say that due notice of the assessment was given and an opportunity to be heard, and appellant had the right to appeal from the court's finding. Appellant has had his day in court. Acts 1909, p. 837. Moreover, there is no constitutional objection to assessing the same tract in two districts if it derives benefits from both. 1 Page & Jones, 638; 123 S. W. 834.

2. The assessment of the tract of land not included in the district when first established was authorized by law, and the notice thereof was sufficient. Acts 1909, p. 836; 1 Page & Jones, 637; 21 Pa. 828.

3. The description of the lands and lots was sufficient. Acts 1909, p. 837; 1 Page & Jones, 551; 2 *Id.* 874; 70 S. W. 144; 4 N. E. 628; 69 Pac. 96; 73 N. W. 801; 80 Pa. 127.

4. There is no merit in the contention that the notice required of the filing of the engineers' report and of the filing of the assessments is insufficient and amounts to a deprivation of due process of law. 1 Page & Jones, 133; *Id,* 141; 59 Ark. 535.

5. The issuance of the drainage district bonds is in no sense a violation of the constitutional provision prohibiting a county from lending its credit to any corporation, etc The county does not promise to pay, does not become resp onsible in any sense for the assessment or bonds, and, in case of default in assessments or repudiation by the district of the bonds, nothing could be collected from the county. 59 Ark. 534; 42 Ark. 162; 69 Ark. 68; 1 Page & Jones, 209; 1 So. 877; 28 Pac. 274.

6. It is true that the drainage law does not contain an express requirement that a drainage district may be organized under it only when such organization will be of public use, for the public welfare, health or utility; nevertheless the court expressly found that this district will improve the public health, be of public utility and serve a public purpose. Moreover, the court will take judicial notice that the drainage and reclamation of large bodies of wet land will effect these ends. 2 Page & Jones, 1317; 1 *Id.* 335, 336, 338; 59 Ark. 532; 124 S. W. 776; 134 S. W. 621; 137 S. W. 251; 110 S. W. 1055; 64 Ark. 555.

6. The court had the right, independently of the statute, to make an order setting down the report of the commissioners and to prescribe the kind of notice to be given. Acts 1909, p. 831. However, a second order was made on April 28, 1911, the day the act was approved, and on May 5, 1911, the notice thereof was again published. This met the requirements of the statute. 61 Ky. 53; 72 Mass. 316; 2 O. Dec. 624; 39 O. St. 573; 42 Ala. 641; 101 Ala. 593. Ample provision is made for the land owner to be heard on the amount of his assessment

of benefit; and, since he is also given the right to appeal to the circuit court where the case will be tried *de novo,* the proceedings would not be vitiated if notice was not given. Acts 1909, pp. 836, 837; 1 Page & Jones, 134; *Id.* 125; 184 U. S. 69; *Id.* 440; 149 U. S. 41; 159 U. S. 537; 112 Fed. 589.

FRAUENTHAL, J. This is an action instituted by certain owners of land situated in a drainage district seeking to enjoin the commissioners thereof from enforcing and collecting the assessment of alleged benefits on their lands and from issuing any bonds in the name of said district. The drainage district was established by an order of the county court of Mississippi County under and in pursuance of an act of the General Assembly approved May 27, 1909, entitled, "An act to provide for the creation of drainage districts in this State," as amended by an act of the General Assembly approved April 28, 1911, (Acts 1909, p. 829, Acts 1911, p. 193); and is known as Grassy Lake and Tyronza Drainage District No. 9.

The appellants by this action attack the constitutionality of said acts and the legality and regularity of the proceedings of the county court in establishing said drainage district. In their complaint they make, in substance, the following allegations: In October, 1910, a petition was filed in said county court, signed by the requisite number of land owners, asking for the appointment of an engineer to make survey of the lands in the proposed drainage district and to report the territory that would be benefited by the establishment thereof. This petition was filed in pursuance of said act of the Legislature, approved May 27, 1909. Thereupon the county court appointed a civil engineer, who made a survey of the territory embraced in the proposed drainage district, and thereafter made a report describing its limits and the various tracts of land therein that would be benefited by the establishment of said drainage district and the construction of a drainage system therein. In said report he stated that "the proposed drainage system will drain, reclaim, improve and benefit the territory included within the boundaries described." The district thus described embraced a large territory, containing about 193,000 acres. Thereupon the county court on April 20, 1911, made an order setting the hearing of said report on May 13, 1911, and directed that notice thereof should be pub-

lished in manner prescribed by said original act. On April 28, 1911, the county court made another order again setting the hearing of said report for May 13, 1911, and directing that notice thereof be given for the time and in the manner prescribed by said amended act. Notice of said hearing was published for the time and in the manner prescribed by said amended act, and on May 13, 1911, the county court, upon investigation, found that the survey of said territory proposed to be established into the drainage district, the description of the limits thereof and the lands included therein were correct. It also found that "the organization of said drainage district will be for the general public welfare, use and utility, and will improve and benefit the public health." It thereupon made an order organizing said territory into a drainage district and establishing it as Grassy Lake and Tyronza Drainage District No. 9. It also appointed three commissioners, as provided for in said original act. The record of the order did not contain the finding that the establishment of the drainage district would be for the public benefit and would benefit the public health, and in certain orders of said court the drainage district was referred to as Drainage District No. 9. Subsequently, in January, 1912, at a regular session thereof, the county court made an order *nunc pro tunc* correcting the said order of May 13, 1911, so as to incorporate the above finding, which was actually made by it on May 13 when making the order establishing the district; and also correcting the designation of the drainage district in all former orders as it was actually designated at the time such former orders were made. The commissioners, after proper qualification, made and filed a report of the assessment of the benefits accruing to all the lands embraced in the limits of said drainage district. They also made and reported assessments on certain lands outside of said limits which would be benefited by the establishment of the drainage district and the construction of said drainage system. Thereupon notice was given in the manner and for the time prescribed in said original act, in which it was stated that the report of said commissioners of said assessment of benefits was set for hearing on November 16, 1911, in said county court. In said published notice certain lands were described as all the lands in a certain township, for example,

"all lands in township 14 north, range 11 east," and the lands in the town of Luxora were referred to as "each town lot in the town of Luxora, Arkansas." The hearing of the report of the assessments was continued until November 27, 1911, and on that day a number of land owners made objection to the benefits assessed against their lands; the hearing of these assessments and all others made in said report, including the assessment of the benefits to the lands not embraced in the original territory, was then had. Thereupon the county court made an order in effect approving the report of said commissioners as to the benefits accruing to all said lands. The complaint further alleged that contracts for the construction of said drainage system had been made, and the commissioners were proposing to issue bonds to pay the cost thereof.

To this complaint a demurrer was interposed upon the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was sustained, and, the appellants refusing to plead further, a decree was entered dismissing the complaint for want of equity. From this decree this appeal is prosecuted.

It is contended that the above act of 1909 and the act of 1911 amendatory thereof are unconstitutional and void because they do not declare that the drainage improvement provided for is for the public health or public benefit. It is urged on this account that the effect of this legislation would grant to individuals the power to take land of others against their will to drain their own private property and to make assessments on property of owners *in invitum* for the benefit of private persons and not for the public use. It is well settled, we think, that the power to condemn and thus take property without consent of the owner for the purpose of reclaiming lands by a system of drainage and of making assessments for that purpose is based upon the ground that the improvement is a public one. 1 Page & Jones on Taxation by Assessment, § 283. The authority for reclaiming overflowed lands is founded upon the ground that it is for the benefit of the public health, and not only upon that ground but also upon the ground that the improvement is of a public nature and for a public purpose. *Williams* v. *Cammack*, 27 Miss. 222; *Wallace* v. *Shelton*, 14 La. Ann. 498. In the case of *Fallbrook Irrigation District* v.

*Bradley,* 164 U. S. 112, the Supreme Court of the United States, in speaking of the exercise of this power by the Legislature, said: "The power does not rest simply upon the ground that the reclamation must be necessary for the public health. That, indeed, is one ground for interposition by the State, but not the only one. Statutes authorizing drainage of swamp lands have frequently been upheld, independently of any effect upon the public health, as reasonable regulations for the general advantage of those who are treated for this purpose as owners of a common property. If it be essential or material for the prosperity of the community, and if the improvement be one in which all the land owners have, to a certain extent, a common interest, and the improvement can not be accomplished without the concurrence of all or nearly all of said owners by reason of the peculiar natural condition of the tracts sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense." *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9; *Wurts* v. *Hoagland,* 114 U. S. 606. Nor is it necessary that the entire State should directly enjoy or participate in an improvement of this nature in order to constitute it a public use within the meaning of the words as used in our Constitution or the Federal Constitution, providing that property shall not be taken without consent of the owner except for a public use. In the broad and comprehensive view that has been taken of the rights growing out of these constitutional provisions, everything which tends to enlarge the resources and promote the productive power of any considerable number of the inhabitants of a section of the State contributes, either directly or indirectly, to the general welfare and the prosperity of the whole community, and, therefore, to the public. The Legislature, in the exercise of its care for the public, may find that some specific district of the State needs legislation which is not applicable to other parts of the State, and, in the absence of some constitutional inhibition, it may legislate directly for such district to accomplish the desired benefit. Likewise, the Legislature may, by general laws, delegate this authority to some public agency providing for the organization of certain territory, and inhabitants thereof, into a district formed under proper regulations and restrictions for the purpose of exercising this power for the benefit of that

portion of the public embraced therein. Cooley on Taxation, p. 617; In re *Bonds of Madeira Irrigation District* (Cal.), 28 Pac., 272. The Legislature, representing the entire people of the State, has the power to declare what is the public policy of the State, and also what is for the public good and benefit. The manner in which the Legislature may exercise this power or make this declaration is left to its own discretion, except as it may be limited by constitutional provision. When, therefore, it provides by legislative enactment for the establishment of an improvement district, it thereby declares that it is for the public good, whether it be for the benefit of the public health or the public welfare, and it may do this without the necessity of declaring it in specific terms. This has been the uniform practice in this State in the formation of special levee and drainage districts and in the enactment of general laws for the formation of such districts. It has been repeatedly held by this court that it is not necessary in forming such districts that the law shall contain a provision for ascertaining the will of the owners of the lands within the limits of the district, or of any portion of the public. *St. Louis S. W. Ry. Co.* v. *Grayson*, 72 Ark. 119; *Alexander* v. *Board of Directors Crawford Levee District*, 97 Ark. 322. This ruling is made because, by the enactment itself, the Legislature declares that the organization of such districts is for the benefit of the public. Legislation has been uniformly sustained and upheld by this court although the special or general enactments for the organization of such improvement districts did not specifically declare that they were for the benefit of the public health or for the public welfare. *Altheimer* v. *Plum Bayou Levee Dist.*, 79 Ark. 229; *St. Louis S. W. Ry. Co.* v. *Red River District*, 81 Ark. 562; *Ritter* v. *Drainage District*, 78 Ark. 581; *Driver* v. *Moore*, 81 Ark. 80.

The drainage district involved in this case embraces a large territory and a great number of the inhabitants of the State, and, necessarily, the establishment thereof was for the benefit of the public. In addition to this, the county court found that the establishment of this drainage district and the construction of the proposed drainage system would be for the benefit of the public health and the public welfare.

It is also urged that the acts are invalid because in violation of art. 12, § 5, of the Constitution prohibiting the

loan of credit of any county to any corporation or association. But the county is not made liable for any indebtedness incurred by the drainage district established under the provisions of these acts, and no loan is authorized to be made by the county to it. The right to authorize such improvement districts to incur indebtedness for which they alone are holden, and the power conferred upon them to issue evidences of indebtedness for which the lands within the districts are alone liable, have been fully recognized and sustained by former decisions of this court. *Carson* v. *St. Francis Levee District*, 59 Ark. 533; *Memphis Trust Co.* v. *St Francis Levee District*, 69 Ark. 284. See also 1 Page & Jones on Taxation by Assessments, § 209; *Excelsior Planting & Mfg. Co.* v. *Green*, (La.) 1 So. 877.

It is urged that the acts are invalid and the proceedings thereunder void because sufficient notice is not provided for therein to the owners of the lands within the districts, and was not given in the proceeding for the establishment of the drainage district involved in this case and the determination of the assessment of the benefits accruing therefrom. By provisions of said acts, two weeks' notice is required to be given by publication in a newspaper published in the county in which the territory embraced within the district lies; and such notice is required to be given both of the hearing for the establishment of the drainage district and also thereafter of the determination of the benefits accruing to the lands therein. The notices required by these acts, we think, are sufficient in form and in time to constitute due process. These notices were given for the time and in the manner prescribed by the acts in the proceedings establishing the drainage district in this case and in fixing the assessment of the benefits accruing to the lands therefrom. In the determination of the benefits in local improvement districts formed in cities and towns, it is provided that ten days' notice of the filing of the assessments and the hearing thereof shall be given (Kirby's Digest, § 5679), and in cases involving improvement districts in municipalities such notice has been held reasonable and sufficient by this court. *Kirst* v. *Street Imp. Dist.*, 86 Ark. 1; *Bd. of Improvement Dist.* v. *Offenhauser*, 84 Ark. 257; *Boles* v. *Kelley*, 90 Ark. 29; *Road Imp. Dist.* v. *Glover*, 86 Ark. 231. See also *Ballard* v. *Hunter*, 74 Ark. 174; *Winona & St. Peter Land Com-*

*pany* v. *Minnesota*, 159 U. S. 537, and 1 Page & Jones on Taxation of Assessments § 125; *Lent* v. *Tillson*, 72 Cal. 404. In addition to this, it is further provided by said acts that the aggrieved party may take an appeal from the orders of the county court establishing the district and fixing the amount of the benefits, which gives to every interested party an additional opportunity to be heard. *King* v. *Portland City*, 184 U. S. 69; 1 Page & Jones on Taxation by Assessments, § 134; *Garvin* v. *Daussman*, 114 Ind. 429.

In this connection it is urged that the order setting the hearing for the establishment of the district and directing that notice be given thereof was made on April 28, 1911, and in pursuance of the provisions contained in the amended act of 1911. It is contended that said act was not then in force because it was approved on April 28, 1911. An act, however, takes effect and becomes in full force after its due passage by the two branches of the Legislature and its approval by the Governor, when containing the emergency clause in compliance with the constitutional amendment known commonly as the Initiative and Referendum. Upon its approval, in conformity with the Constitution, the act is regarded as being in full force and effect during the whole day upon which it is approved. *Mallory* v. *Hiles*, 61 Ky. (4 Met.) 53; *Kennedy* v. *Palmer*, 72 Mass. 316. We are of opinion, therefore, that the amended act was in force on April 28, when the county court made its order on that day. In addition to this, due notice was thereafter given of the hearing had upon the assessment of the benefits, which took place in November, 1911, long after the passage of said amended act. When the owner of land is given a hearing before the assessment of the benefits therein becomes final, he can not complain thereof on the ground that his property is taken without due process of law. *Hagar* v. *Reclamation District*, 111 U. S. 701; *People* v. *Smith*, 21 N. Y. 595; *Gilmore* v. *Hentig*, 33 Kan. 170; *Davies* v. *Los Angeles*, 86 Cal. 46.

It is further urged that the description of certain lands in the published notice of the hearing of said assessment of benefits was not sufficiently definite, thereby making the order of confirmation of the assessment of the benefits invalid. Some of the lands were not described in this notice in subdivisions of townships or sections, but as all the lands in a certain named

township, and the lots in the town of Luxora were not specific-
ally described therein but were referred to only as "each lot
in said town." The act provides that the notice "shall give
a description of the lands assessed in as large tracts as the
descriptions shall permit."

The object of the notice could only be to call the attention
of the owner of the land to the fact that the assessment of
benefits had been made thereon and filed and the day fixed
for the hearing thereof. The assessment list that was filed
gave the description of each tract of land and each lot. The
description given in the notice was sufficient, we think, to ac-
quaint the owner of lands embraced in such general descrip-
tion that his specific land was affected by the assessment made.
1 Page & Jones on Taxation by Assessments, § 551; *St. Louis
v. Koch*, (Mo.) 70 S. W. 143; *Tingue v. Port Chester* (N. Y.),
4 N. E. 628; *Kalamazoo v. Francoise* (Mich.), 73 N. W. 801.

We are also of the opinion that the lands situated outside
of the drainage district, which were benefited by the system
of drainage proposed by the establishment of the district,
could be included in said district. This is specifically pro-
vided for by section 7 of said act of 1909 (Acts 1909, p. 836).
These lands could have been included in the first instance in
the order which was made establishing the district, and we see
no reason why they could not under this legislative provision
be subsequently included therein before the final order estab-
lishing the district and fixing the benefits had been made.
The notice given of the assessment of these lands lying without
the district was, we think, sufficient, although the description
of these lands was not placed in a separate notice, but was in-
cluded in the notice given of the assessment of the lands origi-
nally embraced in the district. This combined notice, instead
of being a disadvantage, was rather for the benefit of the owner
of land outside of the original limits, because he would more
readily be misled if action was taken first upon lands originally
within the district and, at a different time, action should be
taken by the county court upon the assessment of the lands
lying outside of the district.

It is also urged that one tract of land included in this
drainage district was located in another drainage district, and
was therefore not subject to an assessment in this district,

which, it is claimed, would be making a double assessment upon this land for drainage purposes. But this question involves solely the amount of the benefit which such land receives from the drainage system within this district, and with which it should alone be charged. It does not involve the power to include this land within the drainage district. The land may be benefited by both drainage districts. A corner lot located within a city may be benefited by two separate paving improvement districts; and, if it is thus benefited, it would be liable to an assessment in each. *McDonnell* v. *Improvement Dist.*, 97 Ark. 334. For the same reason, a large tract of land which is benefited by two separate drainage districts would be subject to assessment in each district for the benefits obtained from the drainage system provided by each. The amount of the benefit received from each drainage district is a question to be determined by the agency making such assessment, and, if the owner deems himself aggrieved and appeals therefrom, by the court in which a hearing is provided for by these acts. *State* v. *Bugg*, (Mo.) 123 S. W. 827; *Meranda* v. *Spurlin*, 100 Ind. 380.

Counsel for appellants suggest other irregularities in the proceedings had by the county court in establishing this drainage district. These refer to *nunc pro tunc* orders and some other matters. They also urge other objections to the validity of the above acts. We have examined these, but do not deem them of sufficient importance to here note or discuss them. We do not find that any of them is well founded or sufficient to invalidate said acts or the proceedings of the county court had thereunder in the establishment of this drainage district or the assessment of the benefits made upon the lands included therein.

We find no error in the decree rendered in this case, and the same is accordingly affirmed.