SEMBLER *v.* WATER AND LIGHT IMPROVEMENT DISTRICT
No. 2.

Opinion delivered June 23, 1913.

1. IMPROVEMENT DISTRICTS—NEW DISTRICT—RIGHTS AND POWERS.—Where a water and light improvement district is formed embracing all of an existing district and additional territory for the purpose of reconstructing waterworks and lighting facilities, it is a new and independent district; and if it has been legally formed it may proceed with the work of reconstruction, with the single limitation imposed by the statute as to cost, which is that the cost of the reconstruction shall not exceed 20 per cent of the value of the real estate in the new district. (Page 95.)

2. IMPROVEMENT DISTRICTS—NEW DISTRICT COVERING PROPERTY EMBRACED IN EXISTING DISTRICT.—Where property is embraced in and assessed in a water and light improvement district, it may be embraced in a new district covering a broader territory, if additional benefits accrue to the property in the old district. (Page 97.)

3. IMPROVEMENT DISTRICTS—VALIDITY OF ORGANIZATION.—The validity of a new improvement district, embracing property already in an existing district, is not affected by the question of benefits accruing to the property in the then existing district; such question can be considered only in the assessment of benefits. (Page 97.)

4. IMPROVEMENT DISTRICTS—VALIDITY OF ORGANIZATION.—Kirby's Digest, § 5689, relating to improvements made by the owner in an improvement district, relates only to private ownership of property, and can not be extended so as to give the owners of property in an old improvement district credit for an improvement made by the old district, when it is merged into a new district. (Page 98.)

5. IMPROVEMENT DISTRICTS—NATURE OF, AND POWERS.—Improvement districts are governmental agencies and agents of the property owners, with limited authority, and the only powers of the district

are those conferred by the statute, either in express terms or by necessary implication. (Page 98.)

6.  IMPROVEMENT DISTRICTS—RIGHTS OF PROPERTY OWNERS.—Property owners and taxpayers in an existing improvement district have the right to object to any unauthorized change in the property of the district. (Page 99.)

7.  IMPROVEMENT DISTRICTS—SEWER DISTRICTS.—Owners of property not covered by a water system, may organize a sewer improvement district in anticipation of getting a supply of water. (Page 100.)

Appeal from Cross Chancery Court; *Charles D. Frierson,* Chancellor; reversed in part; affirmed in part.

*J. C. Brookfield* and *James B. McDonough,* for appellants.

1.  There is in our State no statutory authority for the organization of a water and light 'improvement district for the reconstruction, repair and improvement of an old plant. Section 5664, of Kirby's Digest, relied on by appellees, authorizes the construction of an improvement, but does not authorize the reconstruction or repair of an old improvement. Water and Light Improvement District No. 2, is, therefore, invalid, and, as it includes the old district, the assessments are void because they exceed 20 per centum of the value of the real property in the district. 86 Ark. 1; 98 Ark. 543; 95 Ark. 575; Kirby's Dig., §§ 5683-5716; 70 Ark. 211.

The Legislature, by the act of 1907, Acts 1907, p. 1142, authorized improvement districts to repair old plants. It was amendatory of, and supplementary to, the improvement district law of the State, Kirby's Dig., §§ 5664-5742, inclusive, and must be understood and construed as a part of it. It is not in conflict with the Constitution—neither does it repeal the law requiring the consent of a majority of the real property owners. The act is a provision for the repair and improvement of old plants, and cures a defect in the old law. Page & Jones on Local Assessments, § 414, and cases cited; *Id.* § 963, and cases cited. See also Acts 1909, p. 742.

New assessments to rebuild old worn-out plants may be made where authorized by statute. Page & Jones,

§ § 380, 381, 463, 379, and authorities cited under each section. See also 59 Ark. 494, 28 L. R. A. 496; 42 Ark. 152; 69 Ark. 68; 67 Ark. 30; 59 Ark. 513; 52 Ark. 107; 48 Ark. 370; 42 Ark. 152.

2. There must be a statute authorizing the reconstruction of an old plant before there can be an assessment for reconstruction. Page & Jones, § § 464, 952, 962, 958, 379, 387, and authorities cited.

3. A sewer district and a sewer without use or without water is void. Page & Jones, § 401, and cases cited in note 12; *Id.* § 404.

An assessment can not be legally imposed on property in one improvement district to pay the cost of improvements in another. 50 Ark. 116.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.

1. The attempt of the city council to repeal the ordinance under which the sewer district was organized, was done long after the assessment was made, and after the time for objections to it had expired. The council had no right to pass the repealing ordinances, and they are invalid. 71 Ark. 4, 11.

So far as the construction of the improvements are concerned, the council had no authority to prohibit their construction and the use of the streets for that purpose. Kirby's Dig., § 5718; 97 Ark. 21; 42 Ark. 152; 55 Ark. 148, 157; 86 Ark. 1, 12; 67 Ark. 30, 37.

2. The law provides that a district may be created "for the purpose of grading or otherwise improving streets and alleys, constructing sewers or making any local improvement of a public nature." Kirby's Dig., § 5664. This court has held that the only limitations on the improvements are that they shall be *local* and of a *public nature.* 67 Ark. 37; 70 Ark. 457, 463, 469.

The inclusion of property within the boundaries of a district creates a *prima facie* presumption that it is benefited, and this presumption can only be overcome by proof of fraud or mistake. 52 Ark. 107, 112; 70 Ark. 451; 81 Ark. 208; 98 Ark. 550. In this case,

if the property in the new district that was not in the old was specially benefited beyond what the property in the old district was benefited, the varying extent of the several benefits was for the assessors to decide, subject to the statutory rights of appeal. 84 Ark. 267, 268.

Authority to construct an original improvement includes authority to reconstruct, or repair, and to reassess for that purpose. 34 Ind. 140; 80 Minn. 293, 83 N. W. 183; 32 Mo. App. 601; 48 N. J. L. 101, 2 Atl. 627; 164 N. Y. 258, 58 N. E. 130; 71 N. J. L. 526, 59 Atl 16; 109 Ky. 1, 58 S. W. 371; 89 Cal. 304, 36 Pac. 885; 20 Minn. 424. The act which appellants say provides a method for reconstructing a waterworks plant, Acts 1907, p. 1142, is invalid for the same reason that the act creating the Russellville Waterworks District, Acts 1907, p. 41, was held to be invalid. 84 Ark. 390.

McCulloch, C. J. This litigation draws in question the validity of two local improvement districts in the city of Wynne, Cross County, Arkansas.

One of them is a district formed for the purpose of reconstructing and extending the system of waterworks and electric lights previously constructed and maintained by another improvement district in the same city; and the other is a district formed for the purpose of constructing a sewer system in the specified territory.

Three suits were instituted, and afterwards consolidated and tried together.

During the year 1899, an improvement district, designated as "Water and Light Improvement District No. 1," was organized in the incorporated town of Wynne, embracing a portion of the territory of said town. The cost of that improvement amounted, according to the showing made in this case, to "twenty per centum of the value of the real property in said district, as shown by the last county assessment," which is the maximum cost permitted under the statute. Kirby's Dig., § 5683. A portion of the cost of that improvement remains unpaid, and of the bonds issued to raise money for the payment of the cost of construction, the sum of $7,000 remains

unpaid at this time. The water and light system so constructed has been maintained in the district up to the present time, but has become out of repair.

The territory of the town of Wynne was subsequently extended, and after the population of the town had greatly increased, it was converted into a city of the second class.

The first controversy arose concerning a proposal to extend the water and light service outside of the limits of the original district, and the first of these three suits was instituted by some of the owners of real property in the district to restrain the board of commissioners from so extending the service beyond the limits of the district.

A district was then organized, designated as "Water and Light Improvement District No. 2," embracing the territory of district No. 1 and much other territory of the city of Wynne, the purpose of said organization being stated in the petitions and ordinances as follows:

"For the purpose of reconstructing the present waterworks constructed by Waterworks Improvement District No. 1, and digging a new well, building a new reservoir and extending the line of pipes so that the water supply in the district will be increased and extended and adequate fire protection afforded," and "also to reconstruct and improve the present electric light plant installed by Water and Light Improvement District No. 1, so that the present plant shall be reconstructed, the current changed from direct to alternating current, and the line of wires extended, so that the property in the district will be supplied with adequate electric lighting facilities."

After the organization of District No. 2 was completed and assessments had been levied, property owners in the old district instituted a second action to declare the organization invalid as being unauthorized by statute.

Another district was organized, designated as "Sewer District No. 1," which embraced the same territory as that covered by Water and Light District No. 2,

and was for the purpose of constructing a sewer system in the district.

After the organization of that district was complete and the assessments levied, a third suit was brought by owners of real property therein for the purpose of declaring the same invalid.

In the meantime, the city council had passed an ordinance undertaking to repeal the ordinance creating the sewer district.

In the new water and light district, and also in the sewer district, sales of bonds were negotiated, and in each of the suits an injunction was sought against the consummation of the sale of bonds. In each of those two suits the board of improvement of each district filed an answer and also a cross complaint, seeking to enforce the assessments levied for the two improvements. It should be added, also, that according to the allegations of the complaint, each of the improvements provided for in the organization of the two districts was estimated to cost 20 per centum of the value of the real property in the district, as shown by the last county assessment.

These are the suits that were consolidated and tried together below, and, for convenience, will be designated as suits No. 1, No. 2 and No. 3, respectively, numbering them in the order in which they are stated above.

Upon final hearing, the chancellor dismissed each of the complaints for want of equity, and the plaintiffs appealed.

Suit No. 1 appears to have become unimportant, and is not pressed for the reason that the relief sought therein is embraced within suit No. 2, involving the validity of Water and Light Improvement District No. 2. That case, therefore, passes out of consideration.

It is contended that the organization of District No. 2 is invalid for the reason that it is, in effect, an attempt to reconstruct and repair the old water and light plants of District No. 1, to extend the service thereof, and to extend the boundaries of the district; and that those sub-

jects are covered by statutes which have not been complied with.

Reliance is placed, in support of this contention, upon the act of May 28, 1907, authorizing the increase of the capacity of waterworks and lighting systems; Act No. 245, approved May 13, 1909, authorizing additional assessments in a district for the purpose of making repairs; and Act No. 246, approved May 13, 1909, authorizing the extension of territory of improvement districts. It is argued that those statutes are exclusive in their operation, and that there can be no increase or repair of a system or extension of territory of a district except in compliance with the terms thereof.

It is contended, also, in the same connection, that the reconstruction of the improvement is part of the same project as the old improvement, and that the statute would be violated if the additional improvement should be undertaken to cost more than 20 per centum of the value of the real property in the district. In other words, the contention is, as we understand it, that the original construction and the proposed reconstruction and extension of the old plant must be treated as a single improvement and that the whole cost must not exceed 20 per centum of the value of the real property in the district.

We are of the opinion, however, that the formation of a new district is a new and independent project which constitutes of itself a single improvement, and that it does not fall within the statutes mentioned above, and is not restricted by the 20 per centum limitation upon the cost of the original improvement. If the district was legally formed, and has the right to proceed with the reconstruction of the old plant, it may be treated as a new and independent project, constituting a single improvement undertaken by the new district, and the only limitation imposed by the statute, so far as the cost thereof is concerned, is that the additional improvement, or, rather, the proposed reconstruction and extension, shall not cost more than 20 per centum of the value of

the real estate embraced in the whole of the new district.

The fact that part of the territory embraced in the new district is already covered, and the property therein assessed for the construction of the old water and light plants, affords no reason why it can not be embraced in a new district covering a broader territory if additional benefits accrue to the property in the old district. That was decided in the case of *Boles* v. *Kelley,* 90 Ark. 29, and in the recent case of *Lee Wilson & Co.* v. *Wm. R. Compton Bond & Mortgage Co.,* 103 Ark. 452, 585, 146 S. W. 110.

The inclusion in the new district of property embraced in the old one, if the new improvement is of such a character that additional benefits may accrue to the property in the old district, relates only to the assessment of the benefits, and that is a question which arises in making the assessments. To illustrate: The benefits accruing to the property in the old district from the improvement constructed therein should be considered in determining the benefits to accrue from the new improvement. But, as before stated, that is a question which does not affect the validity of the organization of the new district, but is considered only in the assessment of benefits, and each of the property owners is afforded, under the statute, an opportunity to challenge the correctness of assessments levied on his property. The remedies were pointed out by this court in the case of *Kirst* v. *Improvement District,* 86 Ark. 14.

The most serious question presented in this case is, whether a new district can be formed for the purpose of reconstructing or extending an improvement, such as the water or light plant, constructed, owned and operated by another district.

This necessarily involves the taking over of the old improvement by the new district, or, at least, a merger of the old district into the new, so far as the ownership of the improvement is concerned. If any authority can be found in the statute for the cession of the property by the old district to the new, or the taking over of the

old property by the new district, then we see no reason why, if it constitutes a benefit to the old district to reconstruct, repair and extend it, it can not be done as a new and single improvement to be paid for by assessments on all the property in the new district. But we are unable to find any authority in the statute for such a proceeding as the cession of the property of the old district to the new. The city council has no authority to cede the property or to transfer the title from the old district to the new. Neither have the property owners of the old district that power, either individually or collectively. There is an entire absence of legislation on that subject. We have a statute (Kirby's Digest, § 5689) which provides that, if, in the construction of any improvement, an owner of property in the district "shall be found to have improved his own property in such manner that his improvement may be profitably made a part of the general improvement of the kind in the district, the value of such improvement made by the owner shall be appraised, and he shall be allowed its value as a set-off against the assessment against his property." The principle declared in that statute, if it could be applied to property owned by an improvement district, would cover the difficulty we find in the present case; but, unfortunately, that statute relates only to private ownership of property, or, rather, improvement by the individual owner of his own property, and can not be made to extend the right so as to give the owners of property credit for an improvement made by the district, when it is merged into a new district. That very principle is the one which controls in the manner of assessing property in a new district where the property of an old district has received benefits from another improvement, but it is not applicable so as to allow the old improvement to be taken over by the new district and credited upon the assessments of individual owners in the old district. Further legislation is required to do that, and to authorize the cession of the old improvement to the new district. It is within the province of the Legislature to provide for such merger

or cession as is herein indicated upon such just and equitable terms as may be deemed appropriate; but the courts can not read any such authority into the statutes. Improvement districts are, in a sense, governmental agencies, and, at the same time, agents of the property owners, with limited authority, and the only powers they have are those conferred either in express terms or by necessary implication.

Now, it will be observed that the new district was organized solely for the purpose of taking over and reconstructing and extending the water and light systems owned by the old district, and, since we find no authority for taking over the old property, the project must fail because the organization is to do a thing which the statute does not authorize. If the new organization should proceed with the reconstruction and extension of the old water and light systems, there would necessarily arise a conflict in the question of ownership and control between the two districts, the old district not being extinguished nor its rights to the property lost by the organization of the new district.

Appellants are property owners and taxpayers in the old district, and have the right to object to any unauthorized change in the property or buildings of the district. They are, in this proceeding, asserting their right to prevent any such unauthorized changes.

We are, therefore, of the opinion that the object of the new organization fails for want of authority to acquire the water and light plants constructed by the old district, and that the whole proceeding must be declared invalid.

Now, as to suit No. 3, relating to the sewer improvement district, we discover no reason why that district should be invalidated and further proceedings thereunder enjoined.

The only ground urged is that it covers territory not now covered by the old water system, and that sewers without water would be no benefit.

The theory is correct, but it does not follow that the

owners may not provide for sewers in anticipation of getting a supply of water, and the fact that the present scheme for supplying water in the additional territory failed, affords no reason why the property owners, if they desire to improve their property by constructing sewers, should not be allowed to proceed in that direction. Other means may be provided, either by the city or by the formation of an independent and separate improvement district, to furnish water in that locality, and in anticipation of that property owners have the right to organize a district to construct sewers. The city council had no authority to abolish this sewer district. *Morrilton Waterworks* v. *Earl,* 71 Ark. 4.

It follows that the decree of the chancellor is correct in suit No. 3, relating to the sewer district, and that decree is affirmed; but the decree in suit No. 2, relating to the organization of Water and Light Improvement District No. 2, and the enforcement of assessments thereunder, is reversed, and the cause remanded with directions to enter a decree in accordance with the prayer of the complaint.

It is so ordered.