ARMOUR *v.* CITY OF FORT SMITH.

Opinion delivered February 22, 1915.

WATER IMPROVEMENT DISTRICT—SUPPLY OF WATER TO ANOTHER WATER IMPROVEMENT DISTRICT.—A city took over the control of the water supply and system of Water District No. 1. Later, District No. 2 was organized, covering other territory in the city not covered by District No. 1. *Held*, the city had authority to permit District No. 2 to connect with the mains of District No. 1, and to sell water to the said District No. 2, where there was an ample water supply and the city made money by the transaction.

Appeal from Sebastian Chancery Court, Fort Smith District; *W. A. Falconer,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This cause was heard upon an agreed statement of facts, from which it appears that a private corporation had for some years operated the waterworks plant which supplied the city of Fort Smith with water, and this plant was acquired, under the authority of a special act of the General Assembly, by a district known as Water District No. 1, which had been organized for the purpose of acquiring this plant. Water District No. 1, at the time of its formation, embraced the then area of the city of Fort

Smith, but before the conveyance of the plant to it the limits of the city had been greatly extended. The city of Fort Smith, immediately upon the conveyance of said plant to Water District No. 1, commenced to operate and maintain said plant with the consent of the Board of Improvement of Water District No. 1, and under the provisions of section 5675 of Kirby's Digest. When the city first began the operation of the plant, there were several mains of said plant which had been constructed by the private corporation, and which extended beyond the limits of Water District No. 1, which mains supplied residents living within the limits of Fort Smith, but beyond the limits of the water district, and the income, both gross and net, of the district, was materially augmented by furnishing water to these persons living without the limits of said district. And since the city began the operation of said plant, it has permitted a number of mains to be constructed outside of Water District No. 1, and to be connected with the mains lying within that district, and these mains were conveyed to the city by the persons who constructed them, and it is agreed that they are now the property of the city unless, by operation of law, they became the property of Water District No. 1 by virtue of their physical connection to the mains of that district. It was further agreed that these mains were not only constructed without cost to Water District No. 1, but that the water rents from consumers outside of the district, who were thus supplied, have increased the gross and net revenue of said plant, and these revenues thus augmented have been sufficient, not only to maintain said plant, but also to pay the second, third and fourth installments of benefits assessed against the property of Water District No. 1, and the property owners living within Water District No. 1 have only been required to pay the first installment of benefits. That another improvement district, known as Water District No. 2, has been duly organized for the purpose of furnishing water to the property lying therein, and that the law in reference to the establishment of such districts has been fully complied with by

District No. 2, except that its plans provide for securing water through the mains of District No. 1 from the pumping plant of this last-named district. It was further agreed that the water supply, reservoirs and pumping machinery, and other equipment, of Water District No. 1 is ample and sufficiently large and complete to supply said new district with water without in any way impairing the efficiency of said plant or the service to owners of property in Water District No. 1, and that, after deducting the cost of operation and of any additional wear and tear, there will be an additional large net income coming into the hands of the city to be applied to the maintenance and equipment of said water plant. Under Act No. 13, of the Acts of 1913, giving Fort Smith a commission form of government, it is provided that the commissioners of that city shall be commissioners of all the improvement districts of that city, and, insofar as the city can do so, it has consented and agreed that District No. 2 might lay its mains and connect same with District No. 1, which district has the only available water supply in or around Fort Smith. It was further agreed that District No. 2 is a thickly settled community, and a failure to secure water for said district constitutes a menace to the health of the people of the whole city.

Appellant is a large owner of property in both districts 1 and 2, and instituted this proceeding for the purpose of testing the validity of the organization of Water District No. 2 and to restrain and enjoin the commissioners of the city of Fort Smith from laying any pipes in said Water District No. 2, and from connecting the same with the mains now operated by the city of Fort Smith, and for the purpose of having the assessment which had been made of the property in Water District No. 2 declared void, and the collector of said district enjoined and restrained from collecting said assessment.

Various exhibits were attached to the complaint, but the agreed statement of facts contains the substance of their recitals.

Upon the final hearing of the cause, the court below dismissed the complaint for the want of equity, and this appeal has been duly prosecuted from that judgment.

*C. E. & H. P. Warner,* for appellant.

The board of commissioners have no authority to supply water to individual consumers residing in District No. 2, or permit said district to connect its proposed system with the water system owned by District No. 1. Kirby's Dig., § 5675; *Id.*, § 5664; 58 Ark. 270; 109 Ark. 90.

*Kimpel & Daily,* for appellee.

The power to operate a water plant, once it is constructed, is vested in the city by virtue of section 5675, Kirby's Digest. This statute authorizes the city to supply water to private consumers, but it contains no such limitation as is urged by appellant, viz., that it can supply water to such private consumers only as live within the limits of the district that constructed the plant.

Cities have broader powers than improvement districts, and in carrying out their work are vested with a large discretion. *Nakdimen* v. *Bridge District,* 115 Ark. 194; 94 Ark. 80; 53 Ark. 300.

The *Sembler* case, 109 Ark. 90, has no application here, the question there involved being merely the taking over of one district by another.

SMITH, J., (after stating the facts). It is insisted that the statute confers no authority for the organization of an improvement district for the purpose of laying a system of pipes, mains and hydrants where the plans of such district contain no provision for a supply of water, except to obtain this supply through an entirely independent district. It is said that the decision of this court in the case of *Sembler* v. *Water & Light Improvement District,* 109 Ark. 90, gives support to that position. We quote from the decision in that case as follows:

"Now, it will be observed that the new district was organized solely for the purpose of taking over and reconstructing and extending the water and light systems owned by the old district, and, since we find no authority

for taking over the old property, the project must fail because the organization is to do a thing which the statute does not authorize. If the new organization should proceed with the reconstruction and extension of the old water and light systems, there would necessarily arise a conflict in the question of ownership and control between the two districts, the old district not being extinguished, nor its rights to the property lost by the organization of the new district.''

In holding that the authority had not been conferred by the statute for one improvement district to take over the property of another, it was there said:

''But we are unable to find any authority in the statute for such a proceeding as the cession of the property of the old district to the new. The city council has no authority to cede the property or to transfer the title from the old district to the new.''

In the instant case, however, no attempt is being made to cede the property of one district to another nor to give one district any control or authority over the property of the other. Districts 1 and 2 are separate entities, and it is only proposed to permit District No. 1 to furnish the supply of water to District No. 2.

Upon the acquisition of the waterworks by the improvement district, it became the duty of the city to operate the plant, and the city immediately assumed this duty, and has since been discharging it. Section 5675, of Kirby's Digest. In speaking of the duty of the cities under this section, 5675, in the case of *Browne* v. *Bentonville,* 94 Ark. 80, it was said:

''The maintenance and operation of the waterworks under the above section are governmental functions, in the performance of which the city council must necessarily be invested with judgment and discretion. Conceding that they have the power, by implication, to make additions and extensions to the system as it was constructed by the commissioners, it is a power to be exercised at the discretion of the council. The council, for instance, in each case must determine whether the necessity exists for

the extension of a main to a particular territory, and what size main is needed, and whether the financial condition of the city will warrant the expenditure. The city fathers in these matters act in a legislative or governmental capacity for the city, and their discretion, exercised in good faith, can not be controlled by mandatory injunction.''

It is argued that the city has neither the power nor the authority to permit District No. 2 to make physical connection with the mains of District No. 1, thereby securing from that district the necessary supply of water. It is argued that this is so because the power conferred upon cities in the operation of the improvements constructed by improvement districts must be strictly construed, and that no authority for this action is conferred by any statute. Section 5675 of Kirby's Digest, reads as follows:

''Sec. 5675. In case of the construction of waterworks, or gas or electric light works, by any improvement district or districts, the city or town council, after such works are constructed, shall have full power and authority to operate and maintain the same instead of the improvement district commissioners, and said city or town council may supply water and light to private consumers and make and collect uniform charges for such service, and apply the income therefrom to the payment of operating expenses and maintenance of such works.''

This section expressly authorizes the sale of water to private consumers, but does not contain any limitation that such sales shall be only to consumers residing within the limits of the district. The operation of a water plant necessarily involves more or less expense, and the city, not the improvement district, is responsible for these operating expenses. *Improvement District No. 1 of Wynne* v. *Brown,* 86 Ark. 61. The responsibility for the successful operation of the plant of this District No. 1 depends upon the city, and as the property of the district can not be assessed to pay operating expenses, these expenses must be derived from consumers, whether lying within or without the improvement district. The agreed statement of facts shows that District No. 1 has water in ex-

cess of its own requirements, and this excess is a commodity, therefore, which it may sell, and the proceeds of this sale be applied to the maintenance and operation of the plant. Indeed, more than that has been accomplished, as appears from the agreed statement of facts, as the proceeds of the sale of the water have been sufficient, not only to operate the plant, but to relieve the owners of the property within Improvement District No. 1 of the burden of paying assessments levied against such property.

When the improvement contemplated under the plans of District No. 2 shall have been completed, it will then be as much the duty of the city of Fort Smith to operate that plant as it is to operate the waterworks owned by District No. 1, and as was said in the cases from which we have quoted, these are governmental functions which involve questions of policy to be decided by the administrative officers of the city. Necessarily there are limitations upon the authority of these officers. For instance, no such use of the property of District No. 1 could be made, in the operation of another district, as would impair the utility of the first district, and there would be no right to pursue any policy which would require the property owners in District No. 1 to incur any expense in connection with their own plant made necessary by the construction of another system. However, no such question has arisen here, for the physical connection of the mains of District No. 2 with those of District No. 1, not only will not add to the burdens of the property owners of District No. 1, but it is shown that the effect of this action is to lighten their burdens.

It is also insisted that the construction of Improvement District No. 2 is not authorized because its source of supply of water may not always be assured, inasmuch as some future administration in the city of Fort Smith may decide not to permit District No 2 to obtain its water from the mains of District No. 1. That, too, is a question which need not now be considered, as no such condition has arisen, and the probability of its arising is merely speculative. This same question was raised in the case of

*Sembler* v. *Water District, supra.* In that case it was urged that an ordinance creating a sewerage district was void for the reason that no provision was made for the necessary water, but upon that question it was there said:

"Now, as to suit No. 3, relating to the sewer improvement district, we discover no reason why that district should be invalidated and further proceedings thereunder enjoined.

"The only ground urged is that it covers territory not now covered by the old water system, and that sewers without water would be no benefit.

"The theory is correct, but it does not follow that the owners may not provide for sewers in anticipation of getting a supply of water, and the fact that the present scheme for supplying water in the additional territory failed, affords no reason why the property owners, if they desire to improve their property by constructing sewers, should not be allowed to proceed in that direction. Other means may be provided, either by the city or by the formation of an independent and separate improvement district, to furnish water in that locality, and in anticipation of that property owners have the right to organize a district to construct sewers. The city council had no authority to abolish this sewer district. *Morrilton Waterworks Imp. Dist.* v. *Earl,* 71 Ark. 4."

It follows from what we have said that the decree of the court below should be affirmed, and it is so ordered.