PENDLETON v. STUTTGART AND KING'S BAYOU
DRAINAGE AND IRRIGATION DIST. No. 1.

5-2684                                    360 S. W. 2d 750

Opinion delivered October 8, 1962.

*Paul B. Pendleton* and *William C. Daviss,* for appellant.

*Cecil C. Matthews* and *George E. Pike,* for appellee.

SAM ROBINSON, Associate Justice. During 1911 there were created in Arkansas County two drainage districts —King's Bayou Drainage District and Wulff Drainage District; Wulff Bayou drains into King's Bayou. The districts are contiguous and extend from the City of Stuttgart to some 12 miles south. The districts accomplished the intended purposes and for a long time have been inactive and dormant; no drainage taxes having been levied for many years. No work has been done in either district since 1935; however, neither district has been formally dissolved.

In 1959 a new district, to be known as the "Stuttgart and King's Bayou Drainage and Irrigation District," was proposed. In this connection a petition was filed in the Arkansas Chancery Court asking that the Court establish a drainage and irrigation district embracing certain described lands, including most of the land in the old King's Bayou District and some of the land embraced in the Wulff District. The petition was granted and the remonstrants have appealed.

First, appellants contend that the plan of the proposed district does not meet the requirements of the statute under which such district is being formed; that the order authorizing the formation of the district is not supported by a preponderance of the evidence, and that there is no substantial evidence to sustain the order.

The new district was organized by authority of Act 329 of 1949, as amended by Act 171 of 1957. Section V of this Act (Ark. Stats. 21-905) sets out the necessary requisites for the formation of a district under the Act. It appears that the Act was fully complied with.

Appellants strongly argue that there is no showing that the project is feasible. Those petitioning for the formation of the district secured an order of the Court appointing an engineer. The engineer provided the required bond; made a survey and ascertained the limits of the region that would be profited by the proposed improvement; made his report giving a general idea of the character and expense, and made suggestions as to the proposed improvements and their location. Mr. Fricke, an engineer employed by appellants, testified that the preliminary data is sufficient to let a contract and complies with all requirements.

Appellants contend that the estimated cost of the improvements does not take into consideration the cost of the right-of-way, and that such cost will be $19,000.00. Even if the right-of-way costs that amount it would not render the project unfeasible. Twenty-six thousand acres of rich land are in the new district and the total cost of the improvements is estimated to be $71,032.80. Ark. Stats. 21-905 provides that the petition for the formation of a district shall contain ''the estimated cost of the project as then estimated by those filing such petition from such information as they may have at that time, with reasonable detail and definiteness in order that the court may understand therefrom the purpose, utility, feasibility, and need or necessity therefor.'' Although the improvements may cost $19,000.00 above the estimate, it would not be such a great difference as to be unreasonable and not in conformity with the estimate.

It is argued that the trial court erred in not removing from the petition the names of Billy J. Burkett and H. H. McCauley. Without their land the petition would not represent the majority necessary for the formation of the district. Appellants rely on *Mahan* v. *Wilson,* 169 Ark.

117, 273 S. W. 383, but in that action, a drainage district case, the Court held that the signers of a petition for the formation of a district could not withdraw their names, except for cause, after the filing of the petition. In *Echols* v. *Trice*, 130 Ark. 97, 196 S. W. 801, the Court held that the only valid reason for removing a name from a petition is some good reason that will justify the change in the attitude on the part of the petitioner, such as fraud, deceit, misrepresentation, duress, etc. In their motion asking that their names be removed from the petition, Burkett and McCauley state: "That, at the time Movants signed said petition, they did so under a misapprehension and misunderstanding of the project, insofar as the type of work; the amount thereof, the complete and total cost thereof, the lands to be included in said proposed district, the complete and total cost per acre as it affected Movants' land, and the mode of payment therefor, and Movants here and now state to the Court that, if they had a complete understanding of the above details of said proposal, they would not have signed the same, and are now most unwilling to have their names included on said petition." No fraud, duress, deception, or anything of that kind is alleged.

The petition for the formation of the district was filed December 17, 1959. Subsequent to that time a great deal of work was done and expense incurred in connection with the project. A lengthy trial was had in which all of the issues were fully developed. The trial ended on March 7, 1960; the case was closed on May 12, 1960; and it was not until May 27, 1960 that Burkett and McCauley asked the Court to remove their names from the petition. In view of all the circumstances, the Court committed no error in denying the motion.

It is next argued by appellants that the trial court erred in ordering lands and improvements already in Wulff Drainage District included in the new district. The inclusion in a new district of lands already in an existing district has been approved several times. *Keystone Drainage District* v. *Drainage District No. 16*, 121 Ark. 13, 180

S. W. 215; *Lee Wilson & Co.* v. *Compton Bond & Mortgage Co.*, 103 Ark. 452, 463 S. W. 110. In the last case the Court said: "It is also urged that one tract of land included in this drainage district was located in another drainage district, and was therefore not subject to an assessment in this district, which, it is claimed, would be making a double assessment upon this land for drainage purposes. But this question involves solely the amount of the benefit which such land receives from the drainage system within this district, and with which it should alone be charged. It does not involve the power to include this land within the drainage district. The land may be benefited by both drainage districts."

Appellants cite *Sembler* v. *Water & Light Imp. Dist.*, 109 Ark. 90, 158 S. W. 972, but there the question was whether or not a new district could take over property belonging to an old district. This involved the transfer of title to property—a water and light plant, etc., and the Court held that the statutes did not provide for the acquisition of property of the old district by the new district; but the Court said: "The fact that part of the territory embraced in the new district is already covered, and the property therein assessed for the construction of the old water and light plants, affords no reason why it cannot be embraced in a new district covering a broader territory if additional benefits accrue to the property in the old district."

But appellants maintain that since the adoption of Act 180 of 1927, lands in an existing drainage district cannot be taken into a new district. Act 180 of 1927 is entitled "An Act to Provide for Adding to Drainage Districts Lands which have been actually Drained into the Ditches of such Districts Where Lands so Added Are Not in any other Drainage District."

The preamble to this Act provides: "WHEREAS, into the ditches of some drainage districts of the State, after the ditches were completed, other lands have been drained by digging private ditches, thereby draining

sloughs, marshes and lakes that could not otherwise be drained, and WHEREAS, in certain instances, sanitary sewer lines have made use of such drainage ditches to procure an emptying outlet, thereby saving the sanitary sewer district large sums of money, and WHEREAS, it is right and just that such lands as make use of and are benefited by such drainage ditches of any such drainage districts should stand their just portion of the costs of the construction and maintenance of such drainage ditches in proportion to the benefits received.''

Section I provides: ''Where any slough, marsh or lake has been drained into the drainage ditches of any drainage district which has completed its work of construction, lands benefited by the drainage of such slough, marsh or lake may be added to such drainage district in the manner provided by Section 3 of this Act; but in no case shall lands paying taxes in another drainage district be added to any drainage district under the provisions of this act, and in no case shall lands, lots or blocks already in a drainage district be in any way affected by the provisions of this act.''

Appellants contend that Section I of Act 180 of 1927 prohibits the inclusion in the new district of lands already in King's Bayou and Wulff Districts. Section I of Act 180 has no application whatever to the situation existing between the King's Bayou District, the Wulff District, and the new district. It is perfectly clear from Act 180 that the purpose of Section I is to prevent owners of sewer lines, sloughs, marshes and lakes, from making use of the drainage district's improvements without just compensation. Moreover, Section I of the Act applies only to lands added to an existing district under the provisions of the Act. The new district is not formed under the provisions of Act 180 of 1927; it is created under the provisions of Act 329 of 1949, as amended by Act 171 of 1957.

Appellant's fourth proposition is that the court erred in including the lands of Georgia Pendleton, Hugh Partridge and Harold Partridge in the new district. It is

claimed that the lands of these parties will receive no benefits from the proposed improvements. True, the trial court found that the lands in question would receive no direct benefits, but the court also found that the lands would receive indirect benefits. In *Memphis Land & Timber Co.* v. *St. Francis Levee District,* 64 Ark. 258, 42 S. W. 763, the Court said: "And the lands above overflow would be increased in value by reason of changes made in their surroundings." In *Carson* v. *St. Francis Levee District,* 59 Ark. 513, 27 S. W. 590, the Court said: "A tract within the District may be above overflow without the levee and yet in various ways be greatly benefited by the levee." To the same effect is *Oats* v. *Cypress Creek Drainage District,* 135 Ark. 149, 205 S. W. 293.

Of course the entire situation will be taken into consideration in the assessment of benefits. In an excellent opinion, the trial court said: "The evidence reflects that all of the protesting Petitioners are in close proximity to the King's Bayou Ditch and that they will receive indirect benefits as a natural result of the proposed improvements to this district. Certainly, to paraphrase from the Lessenberry case (*Lessenberry* v. *Little Rock-Pulaski Drainage District,* 211 Ark. 1046, 204 S. W. 2d 554) the proposed improvement is one in which all the landowners within the territory of the proposed District have, to a certain extent, a common interest, and the improvement cannot be accomplished effectively without the help of all within the area."

Affirmed.