OATES *v.* CYPRESS CREEK DRAINAGE DISTRICT.

## Opinion delivered July 1, 1918.

1. DRAINAGE DISTRICT—ORGANIZATION—NOTICE.—In the organization of a drainage district, only one notice is required to be given preliminary to the organization of a district; that notice must be published by the circuit clerk after the report of the engineer, appointed for the district, has been filed, calling upon all land owners in the district to appear before the court to show cause for or against the creation of the improvement district.

2. DRAINAGE DISTRICT—ORGANIZATION—PETITION.—In the organization of a drainage district only one petition is required under Act 279, Acts of 1909, as amended by Act 221, Acts of 1911.

3. DRAINAGE DISTRICTS—ORGANIZATION—REPORT OF ENGINEER.—In the organization of a drainage district, *held*, the preliminary report of the engineer as to the character and expense of the district was properly made and filed.

4. DRAINAGE DISTRICTS—COMMISSIONERS MUST BE LAND OWNERS—WHEN.—Under § 6, Act 117, Acts of 1913, amending Act 221, Acts of 1911, and Act 279, Acts of 1909, the commissioners of a drainage district lying in more than one county, must be owners of real property within the said district.

5. DRAINAGE DISTRICTS—ORGANIZATION—ASSESSMENT OF BENEFITS.—In the organization of a drainage district, *held*, that the assessment of benefits upon the property in the district was made and filed by the commissioners, and notice thereof published, as required by law.

6. IMPROVEMENT DISTRICTS—ASSESSMENT OF BENEFITS—FUTURE BENEFITS.—The amount of benefit which an improvement will confer upon particular land, and whether it is benefited at all, is a matter of forecast and estimate, and *held*, that there was sufficient evidence to show a benefit to the property of a railway company, from the construction of a drainage ditch.

7. DRAINAGE DISTRICTS—APPORTIONMENT OF BENEFITS.—In the organization of a drainage district, *held*, that the evidence was sufficient to sustain the apportionment of benefits made.

8. DRAINAGE DISTRICTS—ORGANIZATION—RAILROAD PROPERTY—APPORTIONMENT OF BENEFITS.—In the organization of a drainage district, *held*, it was proper in assessing the property of railway company within the district, to make a total assessment of the entire benefit to the whole property of the railway company within the district.

Appeal from Perry Circuit Court; *G. W. Hendricks,* Judge; affirmed.

*W. P. Strait,* for appellants.

1. The assessment of benefits made by the assessors is void, being a violation of the constitutional and statutory provisions requiring equality and uniformity of assessment because of the different methods used and the arbitrary manner of making same. The assessments were arbitrary and without regard to benefits. Three different methods of assessing benefits were made. The methods must be uniform and the same basis fixed for all. 32 Ark. 38. Uniformity and equality according to benefits must be had. 48 Ark. 252; *Ib.* 383; 49 *Id.* 202; 52 *Id.* 112; 56 *Id.* 356; 63 *Id.* 584; 99 *Id.* 504. See also 50 *Id.* 116; 68 *Id.* 376; 86 *Id.* 1; 98 *Id.* 543.

2. The commissioners failed to assess their own property though directly benefited.

3. The general improvement to the county at large is not a special benefit. 89 Ark. 518; 67 *Id.* 30; 3 Am. Rep. 615; 50 Ark. 116; 98 *Id.* 543; 50 *Id.* 116; 18 Am. Rep. 729; 28 L. R. A. (N. S.) 1168, and notes. The uplands were not benefited and the assessments were arbitrary. They were not drained nor improved. 25 A. & E. Enc. L. 1185; 86 Ark. 1; 65 Pac. 186; 14 Am. Rep. 440; 8 *Id.* 225; 46 Am. St. 723.

4. Benefits were not assessed upon each tract. 86 Ark. 1.

5. A levee was also constructed. Two specific characters of improvements were made, only one of which could benefit the lands. 118 Ark. 294; 89 *Id.* 513; 92 *Id.* 93.

6. Legal petitions were not filed nor were proper estimates by the engineer filed. These were jurisdictional. On account of the many defects, the entire proceedings were without authority and void. The assessments were illegal and arbitrary.

*T. S. Buzbee* and *H. T. Harrison,* for the Ch. O. & G. and Chicago, Rock Island and Pacific Railway Company.

1. The assessment is void because based on an estimate of benefits conjectural and general instead of peculiar and special. 89 Ark. 518; 118 *Id.* 300; 64 *Id.* 555;

70 Pac. 1085; 18 L. R. A. (N. S.) 185; 115 N. E. 836; 197 Ill. 344; 64 N. E. 364; 114 *Id.* 585; 100 *Id.* 996; 104 *Id.* 282; 105 *Id.* 731; 48 *Id.* 492.

2. The assessment was unequal and discriminatory. The method of assessing the railroad property was different from that used in assessing other lands. The railroad was assessed as a business; the acreage basis was discarded. A greater burden was placed upon the railroads than others. 48 Ark. 252; 52 *Id.* 112.

3. 113 Ark. 496 does not lay down the rule that increase in traffic is a proper benefit to be considered.

4. There is no evidence of any benefit to accrue to the railroad property. There was no physical or direct benefit to the railroad property. 239 U. S. 485; *Bush* v. *Branson,* U. S. Ct. Ct. App., 8th Circuit, Mss. No. 485, Dec. 1917.

*Charles C. Reid* and *John L. Hill,* for appellees.

1. The assessments were properly made. The assessors followed the law. 39 N. J. 656. They were made according to the amount of benefits accruing. 86 Ark. 1.

2. The assessments of property in Perry were properly made—as also those against the Fourche River Lumber Co. The assessments were not arbitrary but fair and just. 64 Ark. 258. The question of benefits is largely one of opinion. Lands above overflow may be benefited. 99 Ark. 100; 64 *Id.* 258.

3. The benefit need not be a direct physical benefit, but may result from increased health and value, etc. 121 Ind. 99; 19 Am. Rep. 257.

4. The original petition mentions the construction of a levee and flood gate. The Act 177, Acts 1913, § 5, provides that a "ditch" may include a levee and flood gate.

5. All the lands were benefited and none of the assessments were arbitrary or unjust. The court below so found.

6. The railroads received direct physical benefits, besides the drainage made available for cultivation many

acres of land, increased the lands in value and benefited the health of the community. The traffic on railroads was increased, etc.  113 Ark. 496.

7. The proper methods of ascertaining benefits were adopted. Future benefits is largely a matter of estimate and to some extent speculative. The assessment on the railroads is just and fair and they have no cause to complain. The tracks, buildings, etc., could not be assessed on an acreage basis, but the "railroad" was assessed equitably and fairly.

HUMPHREYS, J.  This is an appeal by about forty property owners and the Chicago, Rock Island & Pacific Railway Company from the circuit court of Perry County, attacking the validity of the organization and assessment of benefits on their lands in the Cypress Creek Drainage District in Conway and Perry Counties, Arkansas. The district, as organized, contains 18,000 acres of land lying in the two counties.

It is contended that the orders organizing the district were made by the circuit court when not legally in session.  An examination of the complete record of the proceedings shows that all court orders for the organization of the district were made by the circuit court either at a regular or adjourned term thereof.

(1-2)  It is next contended that legal notice and legal petitions for the formation of the district were not filed.  Only one notice is required to be given preliminary to the organization of a district. That notice must be published by the circuit clerk after the report of the engineer, appointed for the district, has been filed, calling upon all land owners in the district to appear before the court to show cause for or against the creation of the improvement district. The record shows that such a notice was given by the clerk in both Perry and Conway Counties by publication in the "Perry County News" of Perry County and the "Morrilton Headlight" of Conway County. Likewise, only one petition is required in order to form a drainage improvement district under

Act 279, Acts 1909, as amended by Act 221, Acts 1911. This is the initial and preliminary petition required to be signed by three or more property owners in the district, calling upon the court to establish a drainage district to embrace their property, describing generally the region which it is intended shall be embraced within the district. The record shows that such a petition was filed on August 11, 1916. Some contention is made by appellants that the petitions, purporting to show that a majority of the property owners in number and acreage forming the district, were not marked "filed." Such a petition was not necessary under section 2, Act 221, Acts 1911, amending section 2, Act 279, Acts 1909; but if that were necessary, the record shows that a petition was filed December 4, 1916, purporting to have been signed by a majority in number and acreage of all property owners in the district; and that said petition was considered by the circuit court in creating the district.

(3) It is again contended that the maps, profiles, estimates, etc., required to be filed by the engineer, preliminary to the formation of the district, were not filed in the manner provided by law. The law requires that the engineer shall make a survey ascertaining the limits of the region benefited by the proposed drainage system and shall file with the circuit clerk a report showing the territory which shall be benefited by the improvement, giving a general idea of its character and expense, and making such suggestions as to the size of the drainage ditches and their location as he may deem advisable. The record shows that the preliminary report and estimate of the cost of the improvement, as required by section 1, Act 221, Acts 1911, amending sec. 1, Act 279, Acts 1909, was filed on October 16, 1916.

(4) It is insisted that the commissioners are disqualified on account of being land owners in the district. Section 6, Act 117, Acts 1913, amending Act 221, Acts 1911, and Act 279, Acts 1909, requires the commissioners of a drainage district lying in more than one county to be the owners of real property within said district. It

it mandatory that the commissioners be interested in a material way in the district, so the argument that the district should be invalidated and that the assessment should be canceled because the promoters of the district and the commissioners making the assessments were interested can not avail appellants in this case. The further fact that John S. Harris, commissioner, purchased an interest in timber on lands in the district, contingent upon the organization of the district, is not sufficient to invalidate the district for fraud. The evidence is not sufficient to show that the commissioners improperly assessed benefits against the lands on account of Harris' contingent interest in timber on a large tract of land included in the district.

(5)    It is also insisted that the assessment of benefits to the property in the district was not made and filed by the commissioners and notice thereof published, as required by law. The manner of making and filing an assessment of benefits to the lands and improvements thereon, and the notice to be given thereof, is particularly set out and designated in section 7, Act 117, Acts 1913, amending section 7, Act 279, Acts 1909. These requirements were literally complied with. The assessment book was prepared, as required, subscribed by the commissioners, and filed on March 29, 1917. Notice to property owners that the assessment of benefits to be filed was published in the "Perry County News," Perry County, and the "Morrilton Headlight" of Conway County, calling on all property owners to appear before the court on April 24, 1917, and present objections, if any, to the assessments. Appellants are therefore in error in this contention.

(6)    It is insisted by appellants that no benefits will accrue to their property by reason of the improvements and that the benefits assessed are excessive. The chief reason urged is that their lands are high, and not subject to overflow and distant from the canal and laterals.

This court has committed itself to the doctrine that, "The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate." *Louisville & Nashville Ry. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S. 430.

In adopting this doctrine, this court said: "The assessment of future benefits is largely a matter of estimate and to some extent speculative. We must depend largely upon the opinions of men of sound judgment and reasonable information on the subject to determine what the future benefits will probably be. If it were necessary to find an exact standard, a measure of benefits in advance would be impossible. That view of the matter would necessarily lead to the conclusion that benefits must be enjoyed before there can be an assessment to pay for the improvement, which would be a contradiction in itself." *St. Louis & S. F. Rd. Co.* v. *Ft. Smith & Van Buren Bridge Dist.*, 113 Ark. 493. This court has also said that "a tract within the district may be above overflow without the levee and, yet, in various ways, greatly benefited by the levee." *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 514; *Memphis Land & Timber Co.* v. *St. Francis Levee District*, 64 Ark. 258; *Butler* v. *Board of Directors of Fourche Drainage District*, 99 Ark. 100.

A number of the appellants testified that their lands were above overflow, either from rains or from backwater; that no lateral of the system would come in contact with their lands; that their lands needed no drainage; that they would receive no health benefits; and that their lands would not be enhanced in value by reason of the improvement.

W. J. Parkes, engineer for the district, in substance, testified that every tract of land embraced in the district would receive a benefit by reason of the construction of the improvement on account of increased value of the land and better health conditions. Dr. M. E. Howard, health officer of Perry County and a physician of forty years' experience, who was familiar with the topography

of the country included in the district, testified; that, ordinarily, the country north of the ditch was a flat, level country, interspersed with swamps and lakes, and that the construction of the drainage would be a wonderful benefit to the health of the community, as it would eradicate the mosquito pest completely. T. S. Carl and T. E. Holmes, owners of upland in the northern part of the district, similarly situated to the lands of appellants, gave testimony to the effect that although their lands received no direct physical benefit, the improvement would increase them materially in value. H. W. Birch and John S. Harris, likewise owners of upland north of the ditch, near the lands of appellants, testified that all the lands in the district would be materially increased in value on account of the improvement. A large portion of the lands belonging to B. G. White, Mrs. M. L. White, G. O. Breeden, Mrs. M. J. Breeden, L. T. Oates and Mrs. A. J. Patterson, are located near the system of canals and it is quite obvious that much of their lands will be drained and protected from overflow. It is apparent that a large part of the lands of each of these appellants will be materially benefited. There is evidence in the record tending to show that the railroad property of the Chicago, Rock Island & Pacific Railway Company will receive little or no direct benefit and no indirect benefit, but John S. Harris and W. J. Parkes testified that during high-water periods water stood against the dump of the railroad at many places, and John S. Harris further testified that the railroad would receive the same benefit that the property in the town of Perry would receive.

The drainage improvement district law specifically authorizes the assessment of benefits against railroad property within improvement districts, and this court has said that ''benefits may be assessed against the property of a railroad company by reason of the construction of a bridge by a bridge improvement district, and although the result of the construction of the bridge is to create competition for the railroad company.'' *St. Louis & S. F. Rd. Co.* v. *Bridge Dist, supra.*

It was also announced in the case just cited that in assessing benefits to accrue to railroad property it was proper to consider the probable increase in traffic due to estimated growth in population. It was in evidence that the construction of this system of canals would tend to increase the population because it would make available for cultivation large bodies of lands. The evidence strongly tended to show that the improvement would greatly improve health conditions which would benefit all the property in the district, including railroad property.

The circuit court reviewed the assessments placed upon the property by the commissioners or assessors. He had before him numerous witnesses who expressed their opinions with reference to whether the lands were benefited and the extent thereof. In addition to hearing the evidence, he made a personal inspection of the district in company with one of the commissioners and one of the appellants in this cause. After a full consideration of the case, he made many reductions in the assessments, and reduced the assessment of the railroad company from $10,000 to $4,500. The testimony heard by him was conflicting. After a full examination of the record, we think that all the property in the district will receive some benefit and that the amount of benefits adjudged against each tract of land is a fair measure of the benefits that will accrue to it. It is not necessary, however, for us to do more than find that there is sufficient legal evidence to sustain the finding of the court. It is not the province of this court on appeal to pass upon the weight of the evidence. We think there is sufficient legal evidence in the case to support the finding of the court.

(7) It is said that if any benefits will accrue to the lands they have been unequally apportioned to the respective tracts. In other words, that there is an inequality in the assessment of benefits. John S. Harris testified that in making the assessment he used a zone map, prepared by W. J. Parkes, and that from the map,

together with his personal knowledge and inspection of the land, the assessment was made. Upon examination, we find that this zone map disclosed the location of each tract of land with reference to the proposed system of canals, and also shows, in a certain degree, the topography of the country, in that the cypress brakes and streams are located definitely. The character of the lands and their proximity to the canals must necessarily .have aided the commissioners in determining the relative benefits which would accrue to the various tracts of land. In fact, W. J. Parkes testified that the maps showed the relative benefits that the lands would receive—not in dollars and cents—but with relation of the tracts to each other. The commissioners assessed benefits accruing to swamp lands, which will be reclaimed by the system, at $15 per acre and ranging as the benefits decreased downward to as low as $1.50 per acre on the high lands most distant from the canals. Again, John S. Harris testified that in order to properly apportion and equalize the assessment of benefits they took into consideration every element of benefit that would accrue to the different character of lands; for example, that they estimated the lands in the town of Perry would receive $10,000 in total benefits; that the lands in the country, aside from the railroad lands, would receive $72,800 in total benefits, and that the lands of the railroads would receive $10,000 in total benefits. It seems to us that every effort was made by the commissioners to fairly and justly apportion and equalize the assessment of benefits. The assessment of benefits apportioned by the commissioners to appellants' lands, except as to the lands immediately in swamps and in close proximity to the main canals, were reduced by the circuit court materially. The court also reduced the railroad assessment to about $500 a mile. The same rule must be applied to the finding of the court upon this issue as in the first issue discussed. We think there is sufficient legal evidence in the record to sustain the apportionment of benefits.

(8)   Lastly, it is contended that the basis of the assessment is illegal because an acreage basis was applied to country property, a valuation basis to town property and a unit basis to the railroad property.   As we understand the evidence in this case, the assessors adopted a uniform basis for making the assessment on all the lands. They uniformly used a benefit basis.   For example, they ascertained that the total benefit to accrue to the lands in the town of Perry would be $10,000, after taking into consideration every element going to make up the total benefit.   In order to apportion equitably the total benefit assessment on the town lands to the several tracts therein, a valuation basis was adopted.   Likewise, they ascertained that the total benefit to accrue to the lands in the country would be $72,800, and, in order to equitably apportion the benefit assessment to the several tracts lying in the country, they adopted as a basis of apportionment the relative benefit received by each forty-acre tract. The ordinary description of railroad property is neither in lots nor acreage.   The railroad property in question all belonged to one company.   A total assessment of the entire benefit to the whole property was entirely feasible and practical and an apportionment of the benefits on any basis was unnecessary.

The judgment of the circuit court is, therefore, affirmed.