ROAD IMPROVEMENT DIST. NO. 2 OF CONWAY COUNTY et al. v. MIS-
SOURI PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. September 3, 1921.)

No. 5655.

1. **Appeal and error** &#9752;&rarr;1009(3)—**Findings and decree on conflicting evidence presumed correct.**

Where the chancellor in a suit in equity has considered conflicting evidence and made his finding and decree thereon, the presumption is that they are correct, and unless appellants make it clearly appear that an obvious error of law has intervened, or a serious mistake of fact has been made in the consideration and decision of the issues in the case, the adjudication will not be disturbed by an appellate court.

2. **Constitutional law** &#9752;&rarr;284(1)—**Highways** &#9752;&rarr;122—**Legislative assessment of benefits held arbitrary and void, as denying due process.**

The Legislature of Arkansas by Road Laws 1919, vol. 1, pp. 1040–1042, §§ 20, 21, authorized the board of commissioners of a road district, after hearings, to make assessments of benefits on property for the construction of a highway, subject to the right of appeal to the courts by the property owners. Pursuant to such authority the board, after a hearing, made an assessment of benefits against the property of a railroad company in the sum of $2,767.50, which was duly entered on the tax books. By Sp. Act Feb. 23, 1920, No. 308, the Legislature assumed to increase such assessment to $25,000. *Held*, that such action was arbitrary, and the act unconstitutional and void, as taking the property of the railroad company without due process of law, and that the assessment made by the board was the only valid assessment.

3. **Courts** &#9752;&rarr;262(4)—**Federal court of equity has power to prevent taking by state of property without due process of law.**

The power is conferred and the duty is imposed on a federal court, sitting in equity to relieve by its decree, injunction, or other process a citizen of the United States who properly invokes its aid from an arbitrary and unwarranted exercise of the legislative power of a state, which without due process of law or compensation threatens to deprive him of all or a part of his property.

4. **Highways** &#9752;&rarr;138—**Power delegated to make special assessments is judicial in nature and can be exercised only after hearing.**

When a Legislature delegates to a board or to commissioners the determination of the question what lands will be benefited by a road improvement, or what the amount of benefits to such lands will be, the inquiry becomes in its nature judicial in such a sense that property owners are entitled to a hearing, or an opportunity to be heard, after notice, before these questions are determined.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit in Equity by the Missouri Pacific Railroad Company against Road Improvement District No. 2 of Conway County and others. Decree for complainant, and defendants appeal. Affirmed.

The Missouri Pacific Railroad Company, a corporation, brought this suit in equity in the court below, against road improvement district No. 2 of Conway county, district of Arkansas, its board of commissioners, and the sheriff and county clerk of that county, to avoid, on the ground that it violated the Fourteenth Amendment to the Constitution of the United States, Special Act No. 308 of the General Assembly of Arkansas, approved February 23, 1920, which, by its terms, increased the assessment of benefits against the property of the company for the construction of the highway in that district

&#9752;&rarr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from $2,767.50 to $25,000, and its tax on that account from $207.56 to $1,875. Proper pleadings, evidence, a final hearing, a decree for the relief sought by the company, an appeal to this court by the defendant, and a statement of the case under equity rule 77 (198 Fed. xli, 115 C. C. A. xli) followed. The statement of the case consists, first, of a declaration that the appeal herein can be determined without an examination of all the pleadings and evidence, from which the inference is that there was evidence before the court below that is not in this statement; second, of certain statements; and, third, of the deposition of W. P. Strait, the attorney for the company, which was in evidence before the court below, and is declared in the statement to be "a part of the agreed statement of facts"

The statements in the second part of the statement of the case, so far as they seem to be material to the issue before this court, are that the road district embraces a large territory; that in general the highway for the construction of which the assessment of benefits was made runs parallel to the main line of the company's railroad; that at one time the board of commissioners assessed the benefits to the company's road in the district at $25,000, caused that assessment to be entered on the assessment books and its copies, and caused notice of it to be published; that within the time specified in the act creating the road district (1 Special Acts of Arkansas 1919, Roads, p. 1025) for owners of property assessed to make complaint or objection to the assessment, Mr. Strait, the attorney for the company, appeared before the board of commissioners, sitting as a board of assessment, and protested against this assessment; that there was a hearing and discussion of the amount of the benefits between him and the board; that Mr. Strait said that if the board would reduce the assessment to $125 per mile, making a total assessment of $2,767.50, he would use his personal influence to have the company put in free of charge switches and sidings at convenient points along the railroad, so that rock and other materials which the board wished to use in constructing the highway could be unloaded at such points, and the board could save some hauling expenses; that thereupon the board reduced the assessment to $2,767.50, which was at the rate of $125 per mile; that when construction of the highway commenced the board requested the company to put in the switches and sidings, and Mr. Strait used his influence with the company to induce it to do so, but it refused the request; and that thereupon the Legislature of Arkansas passed the act of February 23, 1920, of which complaint is made. That act contained in its first section a finding and declaration that the original assessment of $25,000 made by the board is a fair, just, and equitable assessment, and a direction that the county clerk interline the assessment books, theretofore filed by the board, which evidenced the final assessment of $2,767.50 after notice and hearing, so as to make the assessment of benefits therein against the company $25,000, instead of $2,767.50, and that the county clerk extend the levy of taxes against this legislative assessment of benefits in the same proportion as the levy is made against the assessments of benefits of other property within the district, which was at the rate of 7½ per cent. of the benefits annually.

The second section of the act declared that the sheriff and collector of Conway county was authorized and directed to collect from the company the same proportion of this legislative assessment of $25,000 as he collected of the assessments on other property in the district. After the passage of this act the county court of Conway county made an order to the effect that the county clerk and county sheriff and collector should do as directed by the act. The county clerk then drew a line through the assessment of $2,767.50 in the assessment book, and wrote $25,000.00 underneath those figures, extended the 7½ per cent. tax on this legislative assessment, the sheriff and collector demanded the tax, and the company offered to pay all the other taxes, but refused to pay this, and commenced this suit.

In the third part of the statement of the case, the deposition of Mr. Strait, which was read in evidence below by the company, and which appears "in full as a part of the agreed statement of the case," disclosed these facts: The highway being constructed is substantially parallel with the company's railroad, but has no physical effect upon its property. It extends from the east boundary line of Conway county to the western boundary line thereof,

where it intersects with another line of the same highway, which extends through Pope county, and at the eastern line thereof it intersects with another link of the same highway, which extends through Johnson county. The topography of the country and the developments, improvements, and population therein are substantially the same in Conway county and Pope county. The benefits assessed against the company for the construction of the highway in Pope county are at the rate of $125 per mile of its railroad in that road district, and in Johnson county they are at the rate of $85 per mile of its road in that district. Before any assessment was made by the board, Mr. Strait had a discussion of the amount of the benefits to the company with some of the members of the board of commissioners, in which Mr. Scroggin, one of the members, expressed the view that the benefits were about $3,750, that that amount might be a little cheap, and the result of the conference was that it was tentatively agreed that the amount should be $2,500. Later Mr. Strait was informed that the board had changed this tentative amount from $2,500 to $25,000, but that it was not intended to let the assessment remain at that amount, and it was suggested to him to let the matter wait until some other assessments were adjusted, when the board would hear his complaint and objections and treat the company right.

The act under which the board proceeded (Special Acts of Arkansas 1919, Roads, vol. 1, p. 1025, §§ 20 and 21) provided that the board of commissioners should make an assessment of the benefits to each piece of property, and give notice of the date on which they would hear complaints against and objections to such assessments; the commissioners made this $25,000 assessment and gave this prescribed notice. Mr. Strait, on behalf of the company, made its complaint of and objections to that assessment before the board at the proper time and place. After some other assessments had been adjusted, Mr. Strait took up this matter of the company's assessment, directly discussing it with Mr. Scroggin. The assessment in the adjoining county of Pope had then been made at the rate of $125 per mile of railroad. After that assessment was made the engineer of the company suggested that he might be able to save the board of commissioners expense by putting in spur tracks, and that he thought he could arrange to do so, and Mr. Strait told the commissioners that he would use his influence with the company to have this done, but at the same time he expressly notified them that he had no authority to make and would not make any agreement on behalf of the company to put in such spurs and switches. After the hearing and much discussion it was agreed by the board and Mr. Strait that the assessment of benefits against the company in Conway county should be at the same rate of $125 per mile of the railroad in the district that had been made in Pope county, and the board of commissioners thereupon made its final assessment of the benefits to the company's property of $2,767.50, and this assessment was duly entered and recorded in the proper books of the board and the county. When the time came for the board to handle its rock and materials along the line of the new highway, Mr. Strait and those in immediate charge of the engineering department took the matter of the spurs and switches up and used their influence to have them put in; but the operation and control of the railroad was then in the hands of the government, and the higher officials refused to put them in, and the act of February 23, 1920, here in question, was passed before the operation and control of the road were returned to the company. Mr. Strait testified that the benefits to the property of the railroad company from the construction of the highway parallel to the road were less than $2,767.50, that there were no special benefits to it, that whatever benefits there were were such general benefits as the development of the country which would be received by all communities and property contiguous to the highway and that so far as he knew or as was ever discussed with him, no one ever claimed or maintained originally that anything like benefits in the sum of $25,000 would accrue to the railroad by reason of the construction of the parallel highway.

Charles T. Coleman, of Little Rock, Ark. (Grover T. Owens, Joe T. Robinson, Joseph W. House, Jr., and Walter G. Riddick, all of Little Rock, Ark., on the brief), for appellants.

W. P. Strait, of Morrillton, Ark., and Thomas B. Pryor, of Ft. Smith, Ark. (Edward J. White, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). By its decree in this case the court below found that the special Act of the Legislature of Arkansas No. 308, approved February 23, 1920, whereby the final assessment of benefits to the property of the railroad company made by the defendant Board of Commissioners, on account of the construction of the highway was changed from $2,767.50 to $25,-000, was arbitrary, unconstitutional and void, and it enjoined the defendants from collecting any taxes based on that assessment or on any other assessment than the final assessment of $2,767.50 made by the Board.

[1] The assignment of errors contained six specifications, but the answer to a single question disposes of all of them, and that question is: Have the appellants clearly established by their "statement of the case" that the court below fell into an obvious error of law or made a serious mistake of fact in its finding and conclusion that the act of February 23, 1920, was arbitrary, unconstitutional, and void? This is a suit in equity, and where the chancellor, as in this case, has considered conflicting evidence, and made his finding and decree thereon, the presumption is that they are correct, and unless the appellants make it clearly appear that an obvious error of law has intervened, or a serious mistake of fact has been made in the consideration and decision of the issues in the case, the adjudication will not be disturbed. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; Coder v. Arts, 152 Fed. 943, 946, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372; In re Crocker (D. C.) 217 Fed. 167, 169; Brookheim v. Greenbaum, 225 Fed. 763, 764, 141 C. C. A. 89.

[2] Rule 77 in equity provides that the statement of the case thereunder "shall be taken as superseding for the purposes of the appeal all parts of the record other than the decree," so that in the disposition of this appeal it is unnecessary to look beyond that statement, the material contents of which have been recited. From that statement these indisputable and controlling facts appear: The Legislature of the state of Arkansas had delegated to the defendant, the board of commissioners, the judicial power, and had imposed upon it the judicial duty (a) to make a tentative assessment of the benefits to the property of the company in this road district from the construction of the highway; (b) to give notice to that company of its making of this assessment, and of the time and place when and where the company's complaint of and objections to that assessment could be presented to the board for hearing. Sections 20 and 21 of the act; Special Acts (Road) 1919, vol. I, pp. 1040, 1041, and 1042. The board made the tentative assessment of $25,000, and gave the notice; the company, at the time and place specified in the notice, made its objections to and complaint of this tentative

assessment; the board heard this complaint and these objections, and finally decided and adjudged that the assessed benefits to the company's property were $2,767.50, and caused that assessment to be entered and recorded in the proper public books of the board and the county. A few days later the Legislature of Arkansas passed the act of February 23, 1920, to the effect that such assessment which is the basis and measure of the tax against the company on account of the highway should be $25,000, more than nine times the amount of the final judgment and assessment of the board, instead of $2,767.50. These facts unavoidably create a strong impression that this act of the Legislature was arbitrary and unwarranted, and that it constituted a gross abuse of legislative power.

The Fourteenth Amendment declares:

"Nor shall any state deprive any person of life, liberty or property without due process of law."

And due process of law against one must give him notice of the charge or claim against him and an opportunity to be heard respecting the justice of the judgment, order, or action sought or to be considered. The notice must be such that he may be advised by it of the nature of the claim against him, and of the relief sought or intended, if the claim is sustained. The opportunity to be heard must be such that he may, if he chooses, cross-examine the witnesses produced to sustain the claim, and produce witnesses to refute it, if a question of fact is in issue. In re Rosser, 101 Fed. 562, 567, 41 C. C. A. 497; In re Wood & Henderson, 210 U. S. 246, 254, 28 Sup. Ct. 621, 52 L. Ed. 1046.

[3] The question of fact of which the Legislature assumed jurisdiction and disposition was whether the benefits to the company's property from the construction of the highway were $2,767.50, finally adjudged by the board, or $25,000; but no such process of law as has been described had been invoked before the Legislature passed its act, which, if enforced effectively confiscates annually the difference between 7½ per cent. of $2,767.50 and 7½ per cent. of $25,000, or $1,667.44 of its property. The power is conferred and the duty is imposed upon a federal court sitting in equity to relieve by its decree, injunction, or other process a citizen of the United States who properly invokes its aid from an arbitrary and unwarranted exercise of the legislative power of a state, which without due process of law or compensation threatens to deprive it of all or a part of its property. Kansas City Southern Ry. Co. v. Road Improvement District No. 6 of Little River County, 256 U. S. ——, 41 Sup. Ct. 604, 65 L. Ed. ——, (opinion filed June 6, 1921); Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 58, 59, 36 Sup. Ct. 254, 60 L. Ed. 523; Royster Guano Co. v. Virginia, 253 U. S. 412, 415, 416, 40 Sup. Ct. 560, 64 L. Ed. 989; Coe v. Armour Fertilizer Works, 237 U. S. 414, 423–426, 35 Sup. Ct. 625, 59 L. Ed. 1027; Hancock v. City of Muskogee, 250 U. S. 454, 39 Sup. Ct. 528, 63 L. Ed. 1081.

In support of the constitutionality of this legislative act counsel for the defendants first argue that the first assessment of $25,000 made by the board was valid, and call attention to statements in the statement of the case to the effect that the board, in making that assessment and

the other assessments of benefits to the property of other owners arising from the construction of the highway, considered proper elements and conditions, but that assessment was not a final, but a mere tentative, assessment, subject under the statutes of the state to the complaint and objections of the company, to a judicial hearing of such complaint and objections by the board, and if they were overruled, or the relief sought thereby was denied, to a suit and adjudication of the questions presented in the chancery court of the state of Arkansas. Section 21, supra. The company presented, and the board heard, its objections to and complaint of this $25,000 assessment, and as a result of such hearing the board set that assessment aside, and finally assessed and adjudged the benefits of the company's property to be $2,767.50, and thenceforth its tentative assessment of $25,000 was without force or effect.

Moreover, the deposition of Mr. Strait is as much a part of the "statement of the case" as are the statements therein about the board's $25,000 assessment; and while the statement of the case clearly shows that there was much evidence before the court below which that statement does not contain, it does contain the deposition of Mr. Strait, and no testimony of any one of the commissioners or of any other witness which contradicts the statements of Mr. Strait in that deposition that before the board made its $25,000 assessment he discussed the amount of the benefits with some of the members of the board, that one of them thought it should be about $3,750, but that this amount was perhaps too low, and after discussion they tentatively agreed with him that it should be $2,500, that the assessment they finally made, $2,767.50, after hearing his objections to the board's $2,500 assessment, was at the rate of $125 per mile of the road in the district, that this was the rate at which the assessment of benefits to the property of the company in the adjoining county of Pope was made, that $85 per mile was the rate on which the assessment in Johnson county was based, that when he learned of the board's $25,000 assessment he was informed that it was not intended that this assessment should stand, that the board would take the matter up with the company and treat it right after some other assessments were adjusted, that they did take it up thereafter, and hear the company's objections and complaint, and after the hearing and discussion finally adjudged the assessment of $2,767.50, that there were no special benefits to the property of the railroad from the construction of this parallel highway, and that "so far as I know, and as was ever discussed with me, no one ever claimed or maintained originally that anything like benefits in the sum of $25,000 would accrue to the railroad by reason of the construction of this parallel road."

Repeated readings of the statement of the case and deliberate consideration thereof have convinced that neither the tentative $25,000 assessment made by the board nor anything in the statement of the case estopped the company from insisting, or the court below from finding, that the benefits to the property of the company did not exceed $2,767.50, and that, on the other hand, there was ample evidence in that statement of the case to sustain such a finding, and that there is little doubt that the court below did so find, and on that finding based its decision and decree.

The next contention of counsel for the defendant is that the agreement to reduce the assessment to $2,767.50 was unlawful, because it destroyed the equality and uniformity of the assessment of benefits throughout the district. Conceding that the law requires equality and uniformity in the assessments, in the sense of an absence of unreasonable discrimination between members of classes and between classes of owners and of property, the statement of the case fails to satisfy that the change of the board's tentative assessment of $25,000 to $2,767.50 after the hearing of the complaint and objections of the company had any such effect or was illegal. If, as the statement of the case tends to prove, the benefits to the company's property did not exceed $2,767.-50, it was the right of the company to have the tentative assessment reduced to that amount, and the duty of the board so to reduce it. If it had not done so, the company would have had the right to bring a suit in the chancery court of the state, and there to acquire a decree for such a reduction. In the face of these statutory and legal rights of the company, the suggestion that such a reduction might produce a discrimination that is not proved, and the facts that the board probably could have prevented or removed, and perhaps did prevent or remove, such discrimination by changing other assessments, or in some other lawful way, when it made the reduction, this objection of possible discrimination may not prevail.

Another contention of counsel is that the final assessment of $2,767.-50 was illegal, because the board reduced the assessment from $25,000 to $2,767.50 pursuant to an agreement, that it made the reduction in consideration of a representation and agreement of the attorney and engineer of the company that they would use their influence with it to induce it to put in some switches and side tracks for the board free of cost; but the statement of the case convinces that neither the attorney nor the engineer had any authority to bind the company to put in such switches and side tracks, that they notified the board and its members knew that fact before it made the reduction, that when the board called for the switches and spurs the attorney and engineer did use their influence with the company to obtain them for the board, but the operation and control of the railroad were then in the government, and higher officials refused to furnish them.

Counsel argue the illegality of the board's final assessment as though the fact were established that the value of the benefits was $25,000. On that assumption they write that in making the final assessment the board put only $2,767.50 of this $25,000 on the assessment books, and gave to the company the benefit of $22,232.50 of the $25,000 benefits for the promise of the attorney and the engineer; but this argument is not persuasive, because the assumption is not sustained by the statement of the case, which, in the opinion of the court, warrants the conclusion, probably reached by the court below, that the benefits did not exceed $2,767.50. As the company made no agreement about the switches and spurs, as the statement of the case warrants the conclusion that the benefits to it did not exceed $2,767.50, the fact that the board reduced the tentative assessment to that amount after the hearing in the hope that the attorney and engineer would be able to induce the

company to put in the switches and side tracks free of charge, presents no sound or persuasive reason, either at law or in equity, why the company should not be relieved by a court of equity from the arbitrary and unwarranted increase of that assessment to $25,000 by legislative fiat without due process of law.

The last contention is that the act of the Legislature challenged is in itself constitutional and valid, but none of the authorities cited sustain a statute analogous to this act. Counsel cite Spencer v. Merchant, 125 U. S. 345, 356, 357, 8 Sup. Ct. 921, 31 L. Ed. 763. In that case an assessment was made on property for street improvements without notice to the owners and an opportunity for them to be heard. Some of the owners paid, others refused to pay, and the court held their assessments void for want of notice and hearing. Thereupon the Legislature passed an act to the effect that the part of the assessments for the improvements unpaid might be assessed proportionately on the property of the owners who had failed to pay, provided that notice was given to them and an opportunity afforded for them to be heard. This act was sustained by the court, but in that case the statute expressly provided for notice to the owners of the hearing and for an opportunity for them to be heard before the assessments against them should be made. The act in hand provided neither notice nor hearing.

[4] They cite decisions of the Supreme Court of Arkansas to the effect that the Legislature has the power in the first instance to levy assessments on property in improvement districts, "subject to the right of the landowners to have an arbitrary abuse of that power reviewed by the courts," and that it can therefore adopt as correct the assessment made by the commission as a reassessment by the Legislature. Gibson v. Spikes et al., 143 Ark. 270, 220 S. W. 56, 57; Coffman v. St. Francis Drainage District, 83 Ark. 54, 103 S. W. 179; Davies v. Checo Drainage District, 112 Ark. 357, 166 S. W. 170. But in the case in hand the Legislature did not undertake itself to make the assessment on the property in this district, but it delegated that power to and imposed that duty upon the board of the district. And when the Legislature delegates to a board or to commissioners the determination of the question what lands will be benefited, or what the amount of benefits to such lands will be, the inquiry becomes in its nature judicial, in such a sense that property owners are entitled to a hearing, or an opportunity to be heard, after notice, before these questions are determined. Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 174, 175, 17 Sup. Ct. 56, 41 L. Ed. 369; Embree v. Kansas City Road District, 240 U. S. 242, 247, 36 Sup. Ct. 317, 60 L. Ed. 624. Nor did the act in question adopt an existing assessment by the board. On the other hand, it arbitrarily substituted an assessment of $25,000 against one only of many property owners for the final assessment and judgment of $2,767.50 which the board had made after notice to the owner of the property and a hearing in the ordinary course of its judicial proceeding, and under the established rules of law and equity no rational way of escape is perceived in this state of the case from the finding and decision of the court below that this substitution was arbitrary, unconstitutional, and void.

Finally, counsel contend that the court erred in restoring the final assessment of $2,767.50 made by the board. But that assessment was never removed, nor was it restored. The decision of the court below, which this court sustains, is that the act of the Legislature in question was void, the assessment of $2,767.50 was and ever after it was made, has been in equity and right in full force and effect, and the same conclusions and reasons which have led to the affirmance of that finding and decision sustain the portion of the decree here questioned, which is to the effect that the assessment of $2,767.50 is the only valid assessment, and that the injunction against the collection of the taxes on the basis of the assessment of $25,000 shall not prevent the collection of the taxes on the basis of the assessment of $2,767.50.

It does not appear to this court that the court below fell into any error of law or mistake of fact in its finding or decree in this case, and it is therefore affirmed.