BURTON *v.* HARRIS.

4-6363                                    152 S. W. 2d 529

Opinion delivered June 9, 1941.

*Walter G. Riddick* and *J. M. Willemin,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

GRIFFIN SMITH, C. J. Cypress Creek Drainage District of Perry and Conway counties, embracing approximately 18,000 acres, was formed by a judgment of the Perry circuit court December 4, 1916, pursuant to the provisions of act 279 of 1909 and amendments. The objective was drainage of certain swampy lands north of the town of Perry, and plans called for a main canal with designated laterals.

Nearly fifty landowners filed exceptions to assessments. Some protestants were of opinion their lands were not benefited. Others thought assessments too high. Some adjustments were made.[1] There was an appeal to this court. *Oates, et al.* v. *Cypress Creek Drainage District,* 135 Ark. 149, 205 S. W. 293.

Bonds aggregating $110,000 were sold in three issues. The first bear date of April 1, 1918—$63,000. The second issue (July 2, 1919) was for $17,000, and the third (March 1, 1920) amounted to $30,000.

Appellant, and intervener, O. O. Oates, are landowners. Appellees[2] are the district's commissioners. Juliet Sharp Benecke, another intervener, is owner of bonds of the first issue.

Lands now owned by Serena Burton were determined by the commissioners to have been benefited $200. An assessment was accordingly made, payment; inclusive of principal and interest, to be over a period of twenty-two years.[3]

---

[1] The court heard testimony and made a personal inspection of the lands. Reductions affected approximately forty landowners.

[2] John S. Harris, B. E. Cragar, and G. B. Colvin.

[3] A tabulation accompanying the stipulation of facts shows the highest annual apportionment to have been 8.7 per cent., and the lowest 3 per cent.

Appellant and her predecessors in title paid assessments inclusive of those extended for 1937, but appellant is delinquent for 1938 and 1939.[4]

The third issue of bonds was under authority of act 138, approved February 18, 1920.[5] Section 1 of the act is printed in the margin.[6]

It is conceded that bonds issued in April, 1918, and those issued July, 1919, are valid; but avoidance of the issue of March 1, 1920, is sought, in so far as it exceeds what is termed the legally assessed benefits. Effect of the act of 1920 was to increase from $200 to $300 appellant's assessed benefits for the years subsequent to 1920.

Appellant's arguments are grouped under three subdivisions: (1) The act is void because not within the governor's call of December 9, 1919, for the special session of January 26, 1920. (2) Act No. 138 is arbitrary and capricious, and therefore void. It amounts to a taking of property without due process and without compensation. (3) There is no such thing as a *bona fide* holder for value of a municipal bond in the sense that the expression is used in the law merchant, and this being

---

[4] Bonds outstanding are: First issue, $31,500; second issue, $6,000; third issue, $1,500. Delinquent interest amounts to $12,000. There is an allegation in the complaint of Juliet Sharp Benecke that all principal bond maturities up to and including 1930 were paid when due; that the district paid interest to March 1, 1932; that since 1932 bond maturities had not been paid in due course, but that the district had used tax money to buy bonds at a discount, and that no interest had been paid as it matured since 1932.

[5] Extraordinary session of the General Assembly, commencing January 26, and ending February 6, 1920.

[6] "It is hereby ascertained and declared that the assessment of benefits of Cypress Drainage District of Perry and Conway counties is equitably proportioned among the property owners, but that the same is inadequate in amount to represent the true benefits that will be derived from making the improvements contemplated by the district, and the circuit clerk of Perry county is hereby required to make out two new books of assessment, one for each county, which will be in all respects identical with the assessment of benefits now on file, except that each assessment of benefits will be increased by fifty per cent. of the amount of the present assessment, and when said books have been prepared, he will certify the same and deliver them to the county clerks of the respective counties, to the end that the taxes of said district may be entered upon the tax books of the respective counties.

"The drainage taxes to be collected during the year 1920 will, however, be collected upon the old assessment of benefits as it now stands."

true, neither the district nor its taxpayers can be estopped to assert invalidity of act 138.

*First.*—The extraordinary session of 1920 was called "For the purpose of enacting laws establishing special or local road, bridge, drainage and levee improvement districts and school districts, and conferring special powers thereon, and amending and curing defects in existing special or local laws for the same, and ratifying, confirming and validating special or local improvement districts organized under general laws or special or local laws, and enlarging the powers thereof, and to enact such laws as will permit the completion, reconstruction or extension of waterwork systems and other improvement districts in cities or towns."

It is argued that art. 6, § 19, of the Constitution,[7] expressly limits subjects of legislation to those enumerated in the call unless business for which the assembly was convened has been disposed of and thereafter, by two-thirds vote, the session has been extended. *Jones* v. *State,* 154 Ark. 288, 242 S. W. 377. The 1920 special session was not extended; therefore, appellant insists, the subject-matter embraced within act 138 was alien to the emergencies listed by the governor. We think authority for the statute was found in that part of the call authorizing the General Assembly to ratify, confirm, and validate special or local improvement districts and to enlarge the powers thereof.

Road Improvement Districts Nos. 3, 4, and 5 were created in Washington county by a special act of the General Assembly of 1919. At the special session which convened January 26, 1920,[8] an amendatory statute was enacted. By the amendment it was sought to cure

---

[7] "The governor may, by proclamation, on extraordinary occasions convene the General Assembly at the seat of government, or at a different place, if that shall have become since their last adjournment dangerous from an enemy or contagious disease; and he shall specify in his proclamation the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of, after which they may, by a vote of two-thirds of all the members elected to both houses, entered upon their journals, remain in session not exceeding fifteen days."

[8] The same session enacted the measure questioned by the instant appeal.

irregularities; also to amend §§ 6, 8, and 27 of the creative act of 1919. In an opinion written by Chief Justice McCulloch the subject was held to have been within purview of the call. *McKee* v. *English,* 147 Ark. 449, 228 S. W. 43.

At the extraordinary session of January 26, 1920, a statute affecting road improvement districts in Woodruff county was enacted. Betterments levied on lands in Improvement District No. 2 of the northern district of the county were set aside. It was directed that territory within the district should be embraced within "and made a part of the hereinafter created Road Improvement District No. 16 of the northern district of Woodruff county." There was a legislative finding that District No. 16 (not then in existence) had been benefited by the preliminary work, estimates, and surveys made on account of District No. 2, and that District No. 16 should assume payment of such obligations, ". . . and assessments are hereby authorized to cover the payment of . said benefits by said hereinafter created District No. 16."

Validity of the act was questioned on several grounds, one being that it was not within the governor's call. In an opinion written by Chief Justice McCulloch [9] upholding the act it was said: "The fact that the statute incidentally amends, or even abolishes, another local district does not hamper the power of the Legislature in creating a new district. . . ."

It was then pointed out that the General Assembly, under the Constitution and proclamation of the governor (having power to pass special laws establishing local districts) possessed also the power to abolish other districts or to embrace them within the limits of designated districts, and [this] is "a necessary incident to the exercise of the power conferred." It was held that the case of *Jones* v. *State, supra,* had no application. Mr. Justice Hart (later Chief Justice) dissented in the Jones Case. In *Sims* v. *Weldon,*[10] (opinion also by Chief Justice McCulloch) it was said:

---

[9] *Road Improvement District No. 16* v. *Sale,* 154 Ark. 551, 243 S. W. 825.

[10] 165 Ark. 13, 263 S. W. 42.

"We feel constrained to add our approval to the statement of the law made in the dissenting opinion in [*Jones* v. *State*], that [art. 6, § 19] of the Constitution merely requires the governor 'to confine legislation to particular subjects, and not to restrict the details springing out of the subjects enumerated in the call.' . . . Legislation must be confined to the general purposes specified in the proclamation. Much latitude is allowed for the specification by the governor in his proclamation, but the purposes of legislation must be definitely specified, either broadly or in detail."[11]

In the call here questioned it was intended—and this intent is in express language—to authorize the General Assembly to enlarge powers of special or local improvement districts. Defects were to be "amended and cured" in existing special or local drainage and levee improvement districts. Under authority of the cases cited, enactment of the legislation adding fifty per cent. to existing betterments in Cypress Drainage District was not unauthorized.

*Second.*—Was the purpose achieved by act 138 arbitrary and capricious? Appellant concedes that the General Assembly has power to levy, directly, an assessment of benefits, and agrees that this authority is subordinate only to the right of a landowner to have an abuse of power judicially reviewed.[12] We are reminded that the Legislature, in the first instance—when the district was created—delegated to designated officials the power to assess betterments, and that to assure equal justice courts were empowered to hear complaints of dissatisfied property owners.

The appeal "by about forty property owners and the Chicago, Rock Island & Pacific Railway Company"

[11] See *State Note Board* v. *State ex rel. Attorney General,* 186 Ark. 605, 54 S. W. 2d 696; *Crawford County Levee District* v. *Cazort,* 190 Ark. 257, 78 S. W. 2d 378; *Smith* v. *Refunding Board,* 191 Ark. 1, 83 S. W. 2d 76; *Pope* v. *Oliver,* 196 Ark. 394, 117 S. W. 2d 1072; *McCarroll, Commissioner of Revenues* v. *Clyde Collins Liquors, Inc.,* 198 Ark. 896, 132 S. W. 2d 19; *Arkansas State Highway Commission* v. *Dodge,* 186 Ark. 640, 55 S. W. 2d 71.

[12] *Kansas City Southern Ry. Co.* v. *Ogden Levee District,* 15 Fed. 2d 637-39; *Gibson* v. *Spikes,* 143 Ark. 270, 220 S. W. 56; *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54, 103 S. W. 179; *Davis* v. *Chicot Drainage District,* 112 Ark. 357, 166 S. W. 170.

from judgment of the Perry circuit court *(Oates* v. *Cypress Creek Drainage District, supra)* was decided by this court July 1, 1918. The circuit court had reduced the railroad company's assessment from $10,000 to $4,500, and "many reductions" were made as to assessments of individuals. The opinion contains the following statements: "As we understand the evidence in this case, the assessors adopted a uniform basis for making the assessment on all the lands. . . . For example, they ascertained that the total benefit to accrue to the lands in the town of Perry would be $10,000. . . . Likewise, they ascertained that the total benefit to accrue to the lands in the country would be $72,800. . . . A total assessment of the entire benefit to the whole property was entirely feasible and practical and an apportionment of the benefit on any basis was unnecessary."

In effect, appellant argues that here was a judicial finding, made under processes provided by the General Assembly, that benefits to the property did not exceed $82,800; yet, it is argued, the lawmaking body arbitrarily and capriciously directed the county clerks of Perry and Conway counties to extend increases of fifty per cent. against each assessment. Uniform holdings of this court have been that any amount exacted in excess of special benefits accruing from the improvement is illegal in that property is taken without compensation.[13]

In *Thornton* v. *Road Improvement District No. 1,* 291 Fed. 518, the court of appeals for the eighth circuit had before it a case involving assessments of benefits in Road Improvement District No. 1 of Clark county, the appeal being from a judgment of the district court of the United States for the eastern district of Arkansas. After benefits were assessed the General Assembly enacted several laws whereby, in effect, it was alleged that resulting taxation was just. In its comments the circuit court said:

[13] *Alexander* v. *Board of Directors Crawford County Levee District,* 97 Ark. 322, 134 S. W. 618; *Cribbs* v. *Benedict,* 64 Ark. 555, 44 S. W. 707; *Kelley Trust Company* v. *Paving District No. 46 of Ft. Smith,* 184 Ark. 408, 43 S. W. 2d 71; *Johnson* v. *Kersh Lake Drainage District,* 198 Ark. 643, 131 S. W. 2d 620, 132 S. W. 2d 658, 309 U. S. 485, 60 S. Ct. 640, 84 L. Ed. 881, 128 A. L. R. 386.

"This grossly disproportionate, arbitrary, and excessive assessment of benefits and the taxation based upon it does not constitute that due process of law without which the Constitution of the United States prohibits the taking of the property of the owner without compensation for public use, and no approving acts or fiats of the Legislature of a state enacted without notice to the owners of the property and without opportunity to be heard before any tribunal upon the merits of the issue could constitute such assessments and such taxation or the act or acts which approved them due process of law or relieve the assessment and taxation from the grossly disproportionate, arbitrary, and excessive character which brings them under the ban of the fourteenth amendment to the Constitution." [14]

In *Road Improvement District No. 2 of Conway County* v. *Missouri Pacific Railroad Company*, 275 Fed. 600, the court said, in affirming Judge TRIEBER: "The Legislature did not undertake itself to make the assessment on the property in the district, but it delegated that power to and imposed that duty on the board of the district. And when the Legislature delegates to a board or to commissioners the determination of the question what lands will be benefited, or what the amount of benefits to such lands will be, the inquiry becomes in its nature judicial, in such a sense that property owners are entitled to a hearing, or an opportunity to be heard, after notice, before these questions are determined."

This is the essence of appellant's case. It is argued —and not without force—that because the Legislature met January 26 and adjourned February 6, there was not time for a hearing, no opportunity for a committee to examine the district's plans, or for the members to familiarize themselves with benefits to landowners, or

[14] The court cited *Road Improvement District No. 2* v. *Missouri Pacific Railroad Company*, (C. C. A.) 275 Fed. 600. [The litigation in the Thornton Case related to a road district formed in Clark county. Another road was added to the district's plans. It paralleled one side of lands assessed in the original district. The district, in assessing benefits incidental to the new road, assessed only the new lands added. The result was that (for the new road) lands which abutted on it on one side were assessed, while lands abutting the other side were not. The Legislature passed an act confirming the arrangement. It was attacked as being arbitrary and capricious].

to grasp with understanding the relative elements entering into equitable distribution of costs of the improvements. Appellant says: "This court, in affirming the action of the Perry circuit court, was acting judicially. In so acting it entered a judgment which the Legislature was powerless to amend or reverse. The assessing of benefits and the levying of taxes may be administrative or legislative in character, but when the administrative agency has performed its function and litigation arises concerning the legality of the performance, the administrative process ends and the judicial process begins." [15]

However logical and appealing argument of appellant's able counsel may be, it appears that the point has been decided against their views.

*McCord* v. *Welch*, 147 Ark. 362, 227 S. W. 765, involved the right to tax certain lands. When District No. 6 was formed, the county court found that the lands (situated in an angle formed by two highways to be constructed by Districts Nos. 6 and 8 in Little River county) would not be benefited by the improvements contemplated by District No. 6. The extraordinary session of February, 1920, passed a special act making the excluded lands a part of District No. 6. Validity was questioned on the ground of former adjudication by the county court. This court said, in part:

"Conceding [that allegations of the complaint were sufficient to raise the question that the county court had determined, upon organization of the district, what lands would be benefited, or that it determined, on a petition to annex territory, that these particular lands had not been benefited], we do not think such a state of facts is sufficient to defeat the legislative will in determining that these lands will be benefited and in annexing them to the district."

It was then said that such a determination by the Legislature, in spite of action by the county court "in the character of proceedings referred to," did not constitute an invasion of jurisdiction. Decision of the county court, it was held, did not destroy power of the

---

[15] *Hill* v. *Martin*, 296 U. S. 393, 56 S. Ct. 278, 80 L. Ed. 293; *Boom Company* v. *Patterson*, 98 U. S. 403, 25 L. Ed. 206.

General Assembly to determine for itself the question of benefits and creation of the district embracing the territory. "This is so," says the opinion, "because the Legislature has original power to create local improvement districts and to determine for itself the benefits to be derived from a given improvement, and, since the Legislature possesses the power in the first instance to dispense with the action of the county court in determining benefits, it may disregard such determination by the county court and take the subject up anew and determine those benefits for itself. *The county court in such proceedings does not act in a strictly judicial capacity in the ordinary sense of the term, as used in the Constitution, but the duties thus performed are administrative.*" [16]

*Missouri Pacific Railroad Company* v. *Izard County Highway Improvement District No. 1,* 143 Ark. 261, 220 S. W. 452, involved assessments made by commissioners. In holding that the county court, in reviewing the assessments, did not act judicially, there is the following statement in the opinion, written by Mr. Justice Wood:

"It will be observed that the power conferred by our statute upon the county court is not to determine whether there should be any assessment, but to equalize and adjust the assessment that has been made by the commissioners. There is nothing in the nature of an adversary proceeding, *inter partes,* in the assessment made by the commissioners and equalized and adjusted by the county court under the authority of the statute. The duties which this statute devolves upon the county court, as already stated, are administrative and not judicial, although the line of demarcation is very close."

Other cases relating to power of the General Assembly to make assessments, etc., are *Payne* v. *Road Improvement District No. 1 of Howard County,* 149 Ark. 491, 232 S. W. 943; *Road Improvement District No. 6* v. *St. Louis-San Francisco Railroad Co.,* 164 Ark. 442, 262 S. W. 26, and *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54, 103 S. W. 179.

In *Skillern* v. *White River Levee District,* 139 Ark. 4, 212 S. W. 90, the district had been organized and as-

[16] Italics supplied.

sessment of benefits entered, in conformity to act 97, approved March 15, 1911. An act of 1917 authorized the district, conditionally, to issue certificates of indebtedness to raise money for repairs. The General Assembly, by act 166 of 1919, found that "On account of levee improvement and the other work incident thereto, which has already been completed, and which is largely in excess of the improvement originally contemplated by the district, as well as the improvements now in process of completion, the benefits to the real estate therein, as heretofore fixed and determined, are hereby increased at the rate of six per cent. per annum; such increase of benefits shall be cumulative and shall continue from year to year until the present indebtedness of the district is fully matured and paid."

It was held that, since the General Assembly had power primarily to determine value of the benefits, "it follows as a necessary corollary to this doctrine that the Legislature may increase the original amount of the benefit assessment whether same was made directly by it or by a board of assessors to which the power had been delegated."

There was the further statement that exercise by the board of assessors, or the General Assembly, in the first instance, did not exhaust the power "until the purpose in creating the levee district had been consummated."

These cases, and others of similar purport, seem to be controlling in respect of appellant's rights. See *Benton* v. *Nowlin*, 187 Ark. 738, 62 S. W. 2d 16.

In the cases relied upon by appellant—particularly in *Road Improvement District No. 2 of Conway County* v. *Missouri Pacific Railroad Company, supra,* action of the Legislature was clearly arbitrary. By act 308, approved February 23, 1920, the railroad company's assessment was singled out for an increase from $2,767.50 to $25,000. The original benefits determined by commissioners had been $25,000, but were reduced. The district contended that a representative of the company proposed an assessment of $125 per mile ($2,767.50), and

that as an inducement such representative volunteered to use his influence to persuade the company to make certain facilities available to the district.

Under the law as announced in applicable cases, we are not dealing with a situation where capricious conduct controlled; nor was there an invasion of the judicial province, since work of the assessors, and of the court in reviewing, was ministerial.[17] Of course the circuit court acts judicially in reviewing action of the county court from assessments; but the circuit court in appealed cases merely determines, as a matter of law, whether the county court, acting ministerially, abridged rights of landowners when it reviewed administrative duties of the assessors.

*Third.*—We are also of opinion that appellant is estopped to contest validity of the bond issue. Act 138, although approved February 18, 1920, provided that taxes for the current year should be collected under the old assessment; hence, the first payment under the advanced schedule was not due until 1921. There was ample time, after the act became effective and before bonds were sold, to contest its validity, but instead of applying to the courts for injunctive relief—a proceeding which undoubtedly would have delayed payment by purchasers of bonds until the issue had been determined—appellant's predecessors in title remained quiescent, and not until the 1937 installment of benefits had been paid did it occur to appellant that relief might be procured judicially. In the meantime money of those who bought the bonds had been used to complete the improvement.[18]

It may be argued (in view of this decision) that in so far as state courts are concerned there would have been no relief if action had been taken in 1920, or prior to payment of the first increased assessment in 1921, or before bonds were sold. But this does not follow as a necessary result, even though we now hold that the

[17] Cf. *Missouri Pacific Railroad Company* v. *Conway County Bridge District*, 134 Ark. 292, 204 S. W. 630.

[18] Appellant contends that all laterals were not dug, and that there was insufficient dredging as to a part of the main channel. The agreed statement, however, concedes that such failure only slightly reduced efficiency of the main undertaking.

Legislature did not act capriciously. It must be presumed that if injunctive relief had been prayed, proof would have been supplied relative to benefits. We do not hold that the lawmakers could not, in any instance, act arbitrarily. The contrary has been affirmed. What we do say is that the record before us does not sustain the charge of arbitrary and capricious conduct when action of the General Assembly is gauged by the opinions cited.

Affirmed.